# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00182-CR

**Cody Dean Biddy, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
## NO. CR4979, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

Appellant Cody Dean Biddy was convicted in a jury trial of aggravated sexual assault, aggravated robbery, aggravated assault, and unauthorized use of a motor vehicle. *See* Tex. Pen. Code Ann. § 22.021 (West Supp. 2002), §§ 29.03, 22.02, 31.07 (West 1994). In eleven issues, appellant contends on appeal that the trial court erred by: (1) allowing five witnesses to give hearsay testimony, (2) refusing to allow appellant's aunt to testify as to his state of mind the day after the events giving rise to his conviction, (3) failing to properly instruct the jury concerning the taking and use of notes during the proceedings, and (4) submitting erroneous and incomplete jury instructions and definitions. We will affirm the judgment of the trial court.

## BACKGROUND

Sometime in the early morning of September 19, 1999, R.M.D.[1] was repeatedly sexually assaulted and beaten, robbed of her money and automobile, and abandoned by her attacker in a rural area of Llano County wearing only shoes and carrying an umbrella and an empty purse. At around 2:30 a.m. that same morning, Terry Cannon, William Denniston, and Michael Smith were returning from a fishing trip when they discovered R.M.D. walking on the shoulder of Highway 1431. R.M.D. told them of the attack, and they took her to a nearby convenience store where Elizabeth Weber, an employee of the store, called the police. Llano County Deputy Sheriff David Grandstaff arrived at the convenience store at around 4:20 a.m. and interviewed R.M.D. At around 4:30 a.m., Grandstaff contacted Officer Jay Bauman of the Llano County Sheriff's Department regarding the attack on R.M.D. Bauman went to the Llano hospital where he interviewed R.M.D.

## DISCUSSION

### *Excited Utterance Exception*

In his first five issues, appellant contends that the trial court erroneously admitted the hearsay testimony of Cannon, Denniston, Weber, Grandstaff, and Bauman under the excited utterance hearsay exception. *See* Tex. R. Evid. 803(2).[2] The admissibility of an out of court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995). Therefore, a reviewing court should not reverse

---

[1] While the use of initials generally indicates that the victim is a juvenile, R.M.D. was approximately sixty years old at the time of the offense at issue.

[2] "Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2).

unless a clear abuse of discretion is shown. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

The critical consideration in determining whether a statement constitutes an excited utterance is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" when she made the statement. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001); *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992). Appellant contends that R.M.D. was not still dominated by emotions, excitement, fear, or pain at the time of her statements to the five witnesses. To support this contention, appellant emphasizes that R.M.D. made the statements in response to questions, appeared to be calm, and smoked a cigarette while she was waiting for Deputy Grandstaff to arrive at the convenience store.

All five witnesses testified that R.M.D. appeared to be dominated by emotions, excitement, fear, or pain at the time of her statements. Cannon testified that upon discovering R.M.D. "she just seemed a little hysteric [sic], like, you know, I guess after you get beat up or something like that—something seemed wrong, you know. . . . She was scared." Denniston testified that "[s]he was a little delirious. . . ." Weber testified that when R.M.D. arrived at the convenience store and related what had occurred, she "seemed pretty bruised up, very shaken up. She was very upset. . . ." Grandstaff testified that while he was questioning R.M.D. "[s]he was very upset, very, very much in shock, it appeared. . . . She seemed very disoriented, like something had happened that she couldn't believe." Finally, Officer Bauman testified that while he was interviewing R.M.D. at the

3

hospital "She was very—she was upset. . . . She would—she would cry somewhat every once in a while. . . ."

When overruling appellant's objections, the court acknowledged that R.M.D. made the statements in response to inquiries and that her statements were not made immediately after the attack. However, the court concluded that the State established that R.M.D. was still dominated by emotion, excitement, fear, or pain at the time she made the statements, and the record supports the ruling. *See Salazar*, 38 S.W.3d at 154 ("It is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception."). Based on the testimony of these five witnesses regarding R.M.D.'s mental state at the time of her statements, combined with the attack she suffered and the condition in which she was found, we hold the trial court did not abuse its discretion by overruling appellant's objections. *See Hunt v. State*, 904 S.W.2d 813, 816-17 (Tex. App.—Fort Worth 1995, pet. ref'd) (finding trial court did not abuse its discretion in admitting as excited utterances hearsay statements made three months after offense). Accordingly, we overrule appellant's first five issues.

***Bolstering***

Appellant contends that the trial court erred by admitting the testimony of the five witnesses named above because that testimony had a bolstering effect on R.M.D.'s testimony. Bolstering may occur "when one piece of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Montoya v. State*,

43 S.W.3d 568, 573 (Tex. App.—Waco 2001, no pet.). The court of criminal appeals has defined

bolstering as any evidence

> the *sole* purpose of which is to convince the factfinder that a particular witness or
> source of evidence is worthy of credit, without substantively contributing "to make
> the existence of [a] fact that is of consequence to the determination of the action more
> or less probable than it would be without the evidence."

*Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) (quoting former Texas Rule of

Criminal Evidence 401).[3]

Appellant provides one citation to the record that he contends should be viewed as

his objection to the bolstering nature of the five witnesses' testimony:

> If your definition of excited utterance is true, Your Honor, then hearsay is out the
> window, and we can't have cops after a disturbing event, with 30 people in room, and
> this person sits there and relates what they claimed happened to them, and then the
> State is entitled to call 30 people up here and start going over her entire two-hour or
> hour and a half or 30-minute or 10-minute question and answer session as to what
> occurred.

---

[3] We question whether such an evidentiary rule survives but will address appellant's complaints
in the interests of justice. We note Judge Campbell's concurring opinion in *Cohn*:

> While I agree with the result reached by the majority of the Court, I write separately to
> express my belief that a "bolstering" objection is no longer adequate to preserve error for
> review concerning the admission of evidence because no such ground survived the Texas
> Rules of Criminal Evidence.

*Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring). The
*Montoya* court also addressed the question. *See Montoya v. State*, 43 S.W.3d 568, 573 n. 2 (Tex.
App.—Waco 2001, no pet.).

Assuming this argument should be viewed as complaining of the testimony's bolstering effect, appellant's counsel made the argument while re-urging a motion in limine following Grandstaff's testimony. It is well settled that a motion in limine does not preserve error; to preserve the complaint for appeal appellant was required to object to the bolstering effect of all five witnesses' testimony when the State offered it. *See Willis v. State*, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989). Appellant does not provide, nor can we find, any record of appellant's objections to the bolstering nature of the witnesses' testimony at the time such testimony was offered. Accordingly, appellant has not preserved any error for appeal. *See id.*

Appellant has further failed to preserve his complaint for appeal because his general objection of bolstering did not sufficiently inform the trial court of the nature of his objection. *See Montoya*, 43 S.W.3d at 573. The record reflects that no specific rules of evidence were identified and no theory of bolstering was identified or discussed. *See id.* Appellant's brief addresses arguments not made to the trial court:

> [T]he overall cumulative prejudicial effect of allowing the story to be told six times, by DMR [sic] and the five State's witnesses, created a "bolstering" effect. . . . There is some legal opinion to the effect that "bolstering" is no longer an adequate objection under the Texas Rules of Criminal Evidence. *Montoya v. State*, 43 S.W.3d 568 (Tex. App.—Waco 2001). However, the rules do provide that evidence which is prejudicial to the extent that it outweighs the probativeness should not be allowed by the Trial Court.

The trial court had no way of knowing that appellant's argument was based on the theory that the probative value of the evidence was substantially outweighed by its prejudicial effect. *See* Tex. R. Evid. 403. The record reflects that appellant's argument was framed in the context of

urging a motion in limine requesting the court to exclude the hearsay testimony of unidentified witnesses because R.M.D.'s statements were not excited utterances. On the record before us, appellant's argument was inadequate to preserve the complaint now presented on appeal. Accordingly, we overrule appellant's complaint.[4]

### State of Mind

In his seventh issue, appellant contends that the trial court erroneously excluded the testimony of Wilma Shrubar,[5] appellant's aunt, regarding appellant's statements to her later the morning of the attack on R.M.D. concerning his activities during the night before. The record reflects that Shrubar would have testified that appellant told her that he "just said he played pool and he won. He said, 'I won.'" The State objected to Shrubar "testifying to anything of which she does not have personal knowledge." Appellant's counsel responded that the testimony was not being offered for its truth, but to show appellant's state of mind the morning of September 19. *See* Tex. R. Evid. 803(3).[6] The trial court sustained the State's objection to the testimony.

---

[4] In any event, each witness had different information to convey in his or her respective testimony, and even on the merits of the complaint we would hold the evidence admissible and not prejudicially cumulative.

[5] Appellant spells the witness's name "Schrubar." We will spell the witness's name as it appears in the record.

[6] "Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." Tex. R. Evid. 803(3). Counsel appears to assert conflicting grounds for his objection. If the testimony at issue was not offered for its truth, it is not hearsay. *See* Tex. R. Evid. 801(d). Conversely, if the statement was offered to show appellant's state of mind, it is hearsay but may be admissible under Rule 803(3).

As discussed above, the admissibility of an out of court statement under an exception to the general hearsay exclusion rule is within the trial court's discretion. *Lawton*, 913 S.W.2d at 553. The record reflects that Shrubar would have testified that appellant told her that he played pool and won the night R.M.D. was attacked. Appellant argues Shrubar's testimony would reflect that he was in a cheerful mood inconsistent with having committed the alleged crimes only hours earlier. Shrubar's statement does not convey appellant's state of mind; it relates what appellant claims were his activities the evening of September 18. *See Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000) (holding victim's statement that she was afraid of appellant was properly admitted as Rule 803(3) hearsay exception). Accordingly, Rule 803(3) does not apply to the testimony at issue, and we overrule appellant's seventh issue.

***Jury Note Taking***

In his sixth issue, appellant contends that the trial court erred by allowing the jury to take notes during the proceedings and use them during deliberations without complete and proper instructions. Appellant contends that the trial court erred by failing to (1) inform the parties prior to voir dire that he intended to allow the jury to take notes; (2) properly admonish the jury regarding note taking during lawyer arguments or the reading of the charge; and (3) properly instruct the jury regarding the use of notes during deliberations. During trial, appellant raised no complaint as to the note taking or the trial court's instructions.

A trial court has the discretion to permit juror note taking. *Price v. State*, 887 S.W.2d 949, 954 (Tex. Crim. App. 1994); *Gutierrez v. State*, 8 S.W.3d 739, 745-46 (Tex. App.—Austin

1999, no pet.). The court of criminal appeals has determined that the risks of allowing jurors to take notes can be avoided if the trial court follows four steps:

> *First*, determine if juror note-taking would be beneficial in light of the factual and legal issues to be presented at trial. . . . *Second*, the trial judge should inform the parties, *prior to voir dire*, if the jurors will be permitted to take notes. . . . *Third*, the trial judge should admonish the jury, at the time it is impaneled, on note-taking. . . . *Fourth*, the trial judge should provide [a substantially correct instruction regarding the use of notes during deliberation] in the jury charge at each phase of the trial. . . .

*Price*, 887 S.W.2d at 954-55.

The record reflects that the trial court warned the jurors against distractions caused by note taking and to regard them "as memory aids, as they may help you, and I just encourage you to be cautious about it, as I've indicated." The trial court included in the jury charge further instructions on the use of notes during deliberations. Although the trial court's actions may not have been in full compliance with *Price*, we hold there was no abuse of discretion on the part of the trial court. *See Price*, 887 S.W.2d at 956 (holding trial court did not abuse its discretion even though record did not reflect that parties were informed that jury note taking would be permitted); *see also Hubbard v. State*, 892 S.W.2d 909, 911 (Tex. Crim. App. 1995).

Even if the trial court failed to instruct the jurors in substantial compliance with the four steps outlined in *Price*, appellant does not provide, and we cannot find, any place in the record to reflect an objection to the trial court's actions regarding jury note taking. Accordingly, appellant failed to preserve this complaint for appeal. Tex. R. App. P. 33.1(a). Furthermore, even if appellant had made the proper objections at trial and preserved this issue for appeal, appellant does not contend and the record does not reflect that the trial court's complained of actions probably caused the

rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). He does not complain that the note taking or the deficient instructions harmed him in any way. Accordingly, we overrule appellant's issue.

### *Error in the Jury Charge*

In his four final issues, appellant challenges the trial court's jury charge on the grounds that it: (i) erroneously allowed the jury to convict appellant of aggravated sexual assault upon finding only the elements of simple assault, (ii) included an erroneous definition of consent, (iii) included an erroneous definition of aggravated robbery, and (iv) did not include appellant's requested charge on mistake of fact.[7] The standard of review for jury charge error in a criminal case provides that "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). We examine the error in light of (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) the arguments of counsel, and (4) any other relevant information. *Zuliani v. State*, 52 S.W.3d 825, 829 (Tex. App.—Austin 2001, pet. granted) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim App. 1985)).

The court's charge defined aggravated sexual assault as follows:

---

[7] Appellant preserved these issues for appeal by objecting to them during the charge conference and submitting a substantially correct instruction on mistake of fact. *See* Tex. Code Crim. Proc. Ann. arts. 36.14, .15 (West Supp. 2002).

a. <u>Aggravated Sexual Assault</u>: A person commits the offense of Aggravated Sexual Assault, if the person intentionally and knowingly:

  i.   causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent;

  ii.  causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or

  iii. causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, and if in the course of the same criminal episode the person:

      (1) causes Serious Bodily Injury or attempts to cause the death of the victim or another person;

      (2) by acts or words places the victim in fear that death, Serious Bodily Injury, or kidnaping will be imminently inflicted on any person; or

      (3) by acts or words occurring in the presence of the victim threatens to cause the death, Serious Bodily Injury, or kidnaping of any person.

In his eighth issue, appellant contends that the placement of the aggravating factors under only subparagraph (iii) allowed the jury to convict appellant under either subparagraph (i) or (ii) without finding any aggravating circumstances. Although the typed form of this definition was no model, the application paragraph of the charge correctly tied the aggravating factors to the three methods of sexual assault. That is, the jury was required to find beyond a reasonable doubt both the sexual assault and the aggravating factor in order to find appellant guilty.[8] The application paragraph correctly applied the factors of aggravated sexual assault, the evidence supports the finding that

---

[8] For example, count one asked "if you believe from the evidence by a reasonable doubt . . . [appellant] did . . . cause the penetration of the female sexual organ of [the victim] . . . and in the course of the [episode] did then and there either [(1), (2), or (3)]."

11

appellant committed aggravated sexual assault, and the arguments of counsel tracked the correct

formulation of aggravated sexual assault; therefore, we conclude that appellant was not harmed by

the placement of the aggravating factors in the definition paragraph. *See Zuliani*, 52 S.W.3d at 829.

We overrule appellant's eighth issue.

The trial court's charge included the following definition of consent:

b. Consent as to Aggravated Sexual Assault.  An Aggravated Sexual Assault is without the Consent of the other person if:

i. the actor compels the other person to submit or participate by the use of physical force and violence;

ii. the actor compels the other person to submit or participate by threatening to use force and violence against the other person, and the other person believes the actor has the present ability to execute the threat; or

iii. the other person has not consented and the actor knows the other person is unconscious or physically unable to resist.

In his ninth issue, appellant challenges this definition because "the Jury could have found that even

though a person consented to sex in the first place, if violence occurred during the act itself, the

person would then become guilty of the offense of Aggravated Sexual Assault when the person would

simply be guilty of Aggravated Assault."  The definition correctly reflects the appropriate statutes;

appellant's contention is without merit.[9]  Further, the application paragraph of the charge clearly sets

out the required lack of consent finding necessary to convict appellant of aggravated sexual assault.

---

[9] The language of the charge tracks the statutory definition of sexual assault.  *See* Tex. Pen. Code Ann. § 22.011(b)(1)-(3) (West 1994).  While the statutory definition of aggravated sexual assault in section 22.021(c) expressly forecloses appellant's argument, we will also examine the charge in light of the trial court's application paragraph. *See* Tex. Pen. Code Ann. § 22.021(c) (West 1994).

12

In light of the charge's definition and application section on aggravated sexual assault, the evidence supporting the finding that appellant committed aggravated sexual assault, and the arguments of counsel tracking the correct formulation in the application paragraph, we hold that appellant was not harmed by any error in the court's definition of consent. *See Zuliani*, 52 S.W.3d at 829. We overrule appellant's ninth issue.

In his tenth issue, appellant contends that the trial court's definition of aggravated robbery was erroneous. The court's aggravated robbery instruction was as follows:

> f. Aggravated Robbery: A person commits the offense of aggravated robbery if in the course of committing Theft as hereinafter defined and with intent to obtain or maintain control of the Property, he intentionally or knowingly causes Serious Bodily Injury to another.

Appellant argues that the trial court erred by not first defining robbery and then separately defining aggravated robbery.[10] Appellant contends that "[b]y combining it in one definition method, a charge resulted which would allow someone who had voluntarily surrendered property and then was assaulted, to charge the assaulter with robbery rather than simple assault." Of course, no such facts were shown here. Again, the application section of the charge clearly sets out the elements of robbery as well as the aggravating factors:

> d. [I]f you believe from the evidence beyond a reasonable doubt, that [appellant], on or about September 19, 1999 in Llano County, Texas, as alleged in the

---

[10] The language of the charge tracks the statutory definition of robbery and aggravated robbery. *See* Tex. Pen. Code Ann. §§ 29.02(a)(1), .03(a)(1) (West 1994). We therefore hold that the trial court's instruction is not erroneous; nevertheless, we will examine the charge in light of the trial court's application paragraph.

indictment, did then and there while in the course of committing Theft and with intent to obtain Property of [R.M.D], to wit: U.S. currency, without the Consent of the said [R.M.D.] and with intent to deprive the said [R.M.D.] of said property, did then and there intentionally or knowingly cause Serious Bodily Injury to [R.M.D.] . . . you will find [appellant] guilty of the offense of Aggravated Robbery.

In light of the charge's application paragraph on aggravated robbery, the evidence supporting the finding that appellant committed aggravated robbery, and the arguments of counsel tracking the correct formulation in the application paragraph, we hold that appellant was not harmed by any error in the court's definition of aggravated robbery. *See Zuliani*, 52 S.W.3d at 829. We overrule appellant's tenth issue.

In his final issue, appellant contends the trial court erred by not including an instruction on his mistake of fact defense.[11] Appellant claims the mistake of fact instruction was applicable to the charge of unauthorized use of a motor vehicle. The record reflects that appellant's mother, Shirley Biddy, testified that appellant told her that "a man was going to jail, and he didn't want his car impounded, and he let him drive it home." Appellant contends "[t]his is evidence that he did not have the necessary mental intent of knowing that his using the vehicle was without the effective consent of the owner."

When a defensive theory is raised by the evidence from any source and a charge is properly requested, it must be submitted to the jury. *Woodfox v. State*, 742 S.W.2d 408, 409 (Tex. Crim. App. 1987). The court of criminal appeals has previously addressed a mistake of fact issue

---

[11] "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." Tex. Pen. Code Ann. § 8.02(a) (West 1994).

14

similar to appellant's. *See McQueen v. State*, 781 S.W.2d 600 (Tex. Crim. App. 1989). In *McQueen*, the appellant argued that, in an unauthorized use of a vehicle case, the State had to prove that he knew his operation of the motor vehicle was without the owner's consent. *Id.* at 601. The court expressly held that "in an unauthorized use of a motor vehicle case, a culpable mental state applies to whether the defendant knew his use of the motor vehicle was without the effective consent of the owner." *Id.* at 603.

A vehicle owner's testimony that a defendant had no consent is generally sufficient in itself to prove that the defendant knew he had no consent to operate a vehicle. *Id.* at 604-05. The State proved at trial that R.M.D. owned the vehicle in question and that appellant did not have R.M.D.'s consent to operate her vehicle. From R.M.D.'s testimony the jury could infer that appellant knew he did not have her consent.

The evidence tending to support appellant's factual contention comes solely from the above testimony of appellant's mother. No other evidence corroborates appellant's version of the events. Furthermore, Biddy gives conflicting testimony concerning the facts:

Q: Did he describe the man?

[Shirley Biddy] A: Nope, he didn't.

Q: Did you ask why he was going to jail?

A: He said, "He was drunk."

Q: My question is, did you ask why - -

A: No, I didn't ask him anything about it.

Q: Did you [sic] say the car was that man's car?

15

Mr. Mock:  Object to leading, Your Honor.

A:  No, he didn't say.

The Court:  Overruled.

We cannot say that appellant showed himself entitled to the submission of his mistake of fact defense.  In any event, we hold that the trial court's failure to submit an instruction on mistake of fact did not affect appellant's substantial rights.  *See* Tex. R. App. P. 44.2(b).  Accordingly, we overrule appellant's final issue.

## CONCLUSION

We overrule appellant's issues, and we affirm the judgment of the trial court.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Onion[*]

Affirmed

Filed:  April 11, 2002

Do Not Publish

16

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).