Arthur Rickey BIGGINS, Appellant,

v.

The STATE of Texas, State.

No. 2–01–259–CR.

Court of Appeals of Texas,
Fort Worth.

April 4, 2002.

Cary Piel, Denton, for Appellant.

Bruce Isaacks, Criminal District Attorney, Pamela Moore Lakatos, Patrick Berry, Kristin Kidd, Assistant Criminal District Attorneys, Denton, and Matthew Paul, State Prosecuting Attorney, Austin, for Appellee.

Panel F: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

## OPINION

CAYCE, Chief Justice.

A jury convicted appellant Arthur Rickey Biggins of prohibited sexual conduct

with his daughter, K.R. *See* Tex. Penal Code Ann. § 25.02 (Vernon 1994). After finding the enhancement paragraphs in the indictment true, the trial court assessed his punishment at life imprisonment. In two points, appellant contends the trial court erred in admitting hearsay statements made by K.R. to two witnesses. We will affirm.

On January 16, 2001, at about 1:00 a.m., a dispatch supervisor with the Carrollton Police Department received a 911 call from eleven-year-old S.Y., appellant's stepdaughter. S.Y. told the dispatcher that appellant was having sex with his nineteen-year-old daughter, K.R., who was S.Y.'s half sister. Officer Cable Oliver received the call and arrived at appellant's apartment ten or fifteen minutes later. The door to the apartment was ajar, and no one responded to the officer's knock. The officer then entered the apartment and went to a back bedroom where he saw appellant on top of K.R. Appellant's boxer shorts were down around his ankles, and K.R. was nude from the waist down. Appellant appeared to be having sexual intercourse with her. K.R. looked scared and like she was about to cry. When appellant stood up, his penis was erect and shiny. Appellant first told the officer that K.R. was his stepdaughter, but later admitted that K.R. was his biological daughter.

Officer Richard Bachus arrived shortly after Officer Oliver and spoke with K.R. He said that she was "obviously upset" and was sobbing and shaking. He believed that she was "under the stress of something that had just happened to her." K.R. told the officer that she had been sleeping and that appellant had come into her bedroom and started having sex with her. She said she had not wanted to have sex with appellant, but was too scared to do anything. Officer Bachus said K.R.'s "level of being upset and crying seemed to escalate the longer" he was there and that K.R. "had gone from sobbing to crying, wailing."

K.R.'s aunt, Crystal Rainwater, and a victims advocate from the police department, Sylvia Alvarez, were also called to the scene. Officer Bachus believed that thirty minutes to an hour passed before they arrived. The officer stated that during that time K.R.'s emotional condition was "up and down." He said there was a moment that she "calmed down a bit" while she was talking with a family member on the phone, but he could not characterize her emotional condition as normal or calm. He believed that when she "calmed down some," she appeared "calm . . . enough to reflect on things." He said K.R. was still upset when Rainwater and Alvarez arrived and that there was never a time that she did not seem upset over the incident.

According to Rainwater, K.R. was upset and crying when she arrived and appeared "to still be under the distress" of what had happened. Rainwater said that after receiving the call from the police, it took her approximately eleven to twelve minutes to get to the apartment. Over appellant's objection, Rainwater testified that K.R. told her, "I told you he's crazy. I told you he's crazy. That was my daddy, and he did this to me. He's nasty, he's nasty." Rainwater said that K.R. was very emotional and seemed "in total fear and terror."

Alvarez testified that after being paged, it took her, at most, ten minutes to get to the apartment. She said K.R. was really upset and was shaking. Over appellant's objection, she testified that K.R. told her that appellant had penetrated her with his fingers and his penis and that she had tried to stop him from doing so. K.R. did not testify at trial.

■ In two points, appellant contends the trial court erred by allowing Rainwater and Alvarez to testify to K.R.'s out-of-court statements under the excited utterance exception to the hearsay rule. *See* Tex.R. Evid. 803(2). We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994). The trial court's ruling will not be reversed as long as it is within the "zone of reasonable disagreement." *Couchman v. State*, 3 S.W.3d 155, 158 (Tex.App.—Fort Worth 1999, pet. ref'd).

■ An excited utterance is defined as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R. Evid. 803(2). This exception is founded on the belief that the statements made are involuntary and do not allow the declarant an adequate opportunity to fabricate, ensuring their trustworthiness. *Couchman*, 3 S.W.3d at 159. To determine whether a statement qualifies as an excited utterance, (1) the statement must be the product of a startling occurrence, (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence, and (3) the statement must be related to the circumstances of the startling occurrence. *Id.* Other factors the court may consider are whether the statement is spontaneous or in response to questions and how much time has elapsed between the startling event and the statement. *See Wood v. State*, 18 S.W.3d 642, 652 (Tex.Crim.App.2000); *Bondurant v. State*, 956 S.W.2d 762, 766 (Tex.App.—Fort Worth 1997, pet. ref'd).

■ Appellant argues that K.R. had already calmed down and merely became "re-excited" when she told Rainwater and Alvarez about the events. In support of his argument, appellant relies upon the fact that Officer Bachus (1) "observed moments of calm displayed by [K.R.] as she was talking on the phone to a relative," (2) "observed at least two times when [K.R.] became calmer," (3) agreed that "[K.R.] had calmed down enough to reflect on things, to think about events," and (4) agreed that "[K.R.] was getting re-upset by rehashing events as she later related events to other people." He urges that the stress of excitement caused by the occurrence had been broken; thus, rule 803(2) did not apply to allow testimony of K.R.'s out-of-court statements.

After a careful review of the testimony, however, we conclude that the testimony of Officer Bachus, Rainwater, and Alvarez shows that K.R.'s statements were made within thirty minutes to an hour after her father engaged in sexual relations with her—undoubtedly, a startling occurrence. Their testimony also shows that the statements were made while K.R. was still in the grip of the emotions, excitement, fear, or pain resulting from the occurrence even though she may have appeared relatively calmer at various times during that period of time. Finally, her statements were related to the circumstances of the sexual contact with her father. We, therefore, conclude that the trial court did not abuse its discretion in admitting Rainwater's and Alvarez's testimony about K.R.'s statements under the excited utterance exception to the hearsay rule. We overrule appellant's points.

We affirm the trial court's judgment.

DAUPHINOT, J., files a dissenting opinion.

DAUPHINOT, Justice, dissenting.

I respectfully dissent to the majority's holding that K.R.'s out-of-court statements to Rainwater and Alvarez were properly

admitted under the excited utterance exception to the hearsay rule. I am particularly concerned that we have lost sight of the real meaning of an "excited utterance," which would invest clear hearsay with such "indicia of reliability" as to justify its admission into evidence.[1]

An excited utterance is not any statement made when a person is "excited" or "upset." It follows, then, that testimony that the declarant seemed "upset" and "emotional" before she uttered the statement is insufficient to satisfy the requirement that the declarant be "in the grip of violent emotion," rendering her incapable of fabrication.[2] In order for a statement to qualify as an excited utterance, the declarant must have been more than upset, more than excited. She must have been in the grip of overwhelming emotion arising from the event or condition to which the statement relates. Furthermore, the utterance must have been a spontaneous response to an external shock, made under the immediate and uncontrolled domination of the senses. "The circumstances must show that it was the event speaking through the person and not the person speaking about the event."[3]

I do not agree, therefore, with the majority that K.R.'s statements to Rainwater and Alvarez satisfied the requirements for admission as excited utterances. To the contrary, Officer Bachus acknowledged that K.R. had "calm[ed] down enough to reflect on things" and spoke on the telephone to family before Rainwater and Alvarez even arrived at the scene. In the same manner that passage of time and being allowed personal telephone calls attenuate the taint of illegal police activity, passage of time and engaging in personal telephone calls assuage the grip of overwhelming emotion arising from the event or condition to which the statement relates. Accordingly, I would sustain Appellant's complaints in this regard and proceed to conduct the appropriate harm analysis to determine whether the trial court's error in admitting such evidence calls for a reversal of the judgment.

---

1. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

2. *King v. State,* 631 S.W.2d 486, 491–92 (Tex. Crim.App.), *cert. denied,* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

3. *First S.W. Lloyds Ins. Co. v. MacDowell,* 769 S.W.2d 954, 959 (Tex.App.—Texarkana 1989, writ denied); *see also City of Houston v. Quinones,* 142 Tex. 282, 177 S.W.2d 259, 262 (1944); *Malone v. Foster,* 956 S.W.2d 573, 580 (Tex.App.—Dallas 1997), *aff'd,* 977 S.W.2d 562 (Tex.1998).