In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-068 CR


____________________



JIMMY RODRIQUEZ YTUARTE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause No. B-000173-R






O P I N I O N


 A jury convicted Jimmy Rodriquez Ytuarte of two counts of aggravated assault and

sentenced Ytuarte to twelve and one-half years' confinement in the Texas Department of

Criminal Justice-Institutional Division, for each count; the sentences run concurrently.
Ytuarte appeals raising eight points of error.

 In his first three points, Ytuarte contends the evidence is legally and factually
insufficient to support his conviction. Briefly summarized, the evidence adduced at trial
established Barbara Ytuarte was assaulted. At the time of the attack, Barbara was married
to Jimmy Ytuarte. Sandy Rogers, a registered nurse, was working at Doctor's Hospital
when Barbara came in for treatment. Barbara identified her attacker as her husband.

 At trial, Barbara had difficulty remembering what happened, including what
happened at the hospital and her own statements to both the hospital personnel and law
enforcement. Barbara recalled making the statement that she and Jimmy attended a bonfire
at the home of an acquaintance in North Vidor. Barbara further recalled making the
statement that an exchange of remarks became heated between her and either Laurie or
another lady. Barbara testified she got in Laurie's face, hollering at her, then Barbara
pushed her. Laurie hit Barbara and Barbara fell down. Laurie began kicking her. That
is all Barbara could remember. Barbara denied Jimmy was her attacker.

 Connie Ytuarte, Jimmy Ytuarte's daughter-in-law, testified he told her (Connie) that
he hit Barbara. Connie than asked, "You hit her?" Ytuarte replied, "Yes." According
to Connie, Barbara never told her she [Barbara] was beaten up by Laurie or some other girl
at a bonfire. Connie testified that when Barbara indicated she and Ytuarte might get back
together, Connie told her, "He's going to do it again." Barbara at first said, "If I take him
back, then he might do it worse. I could be dead." 

 Detective Gary Platt testified Barbara told him that Jimmy Ytuarte beat her up and
threatened to kill her while brandishing a baseball bat. Investigator Thomas Smith testified
Barbara told him that two unknown white females had followed her home from a club in
Vidor and assaulted her at the house. 

 Ray Lopez, a friend of Jimmy Ytuarte's, testified they went to a bonfire, he was pretty

sure it was the same day, and Jimmy and Barbara were arguing. Lopez did not witness an
altercation between Barbara and any girls. 

 In determining the sufficiency of the evidence, we consider all the evidence, whether

properly or improperly admitted. See Johnson v. State, 871 S. W.2d 183, 186 (Tex. Crim.

App. 1993); and Beltran v. State, 728 S.W.2d 382, 389 (Tex. Crim. App. 1987). Therefore
Barbara's hearsay statements to Detective Platt are before us in deciding these points of error.

 Ytuarte contends there was no evidence Barbara sustained a serious bodily injury. (1)
Sandy Rogers testified Barbara sustained a concussion. She further testified that a
concussion can be a serious bodily injury, causing impairment of the function of the brain
which can then affect other bodily functions, such as breathing and the heart. See Powell
v. State, 939 S.W.2d 713, 715 (Tex. App.--El Paso 1997, no pet.). Rogers' testimony
was not contested.

 The jury is the trier of fact, the sole judge of the credibility of the witnesses and the

weight to be given their testimony. See Tex. Code Crim. Proc. Ann. § 38.04 (Vernon
1979). The jury may accept or reject all or any part of the testimony. See Penagraph v.
State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). Any contradictions in the evidence
are reconciled by the jury and the jury's determination will not be disturbed on appeal so
long as there is enough credible testimony to support the verdict. See Bowden v. State,
628 S. W.2d 782, 784 (Tex. Crim. App. 1982).

 Viewing all of the evidence in the light most favorable to the prosecution, a rational
trier of fact could have found beyond a reasonable doubt the essential elements of the
crime charged. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979). We therefore hold the evidence is legally sufficient to support the jury's verdict.

 Viewing all the evidence without the prism of "in the light most favorable to the

prosecution" and considering the testimony of defense witnesses and the existence of
alternative hypothesis, we find the jury's verdict is not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996). We determine the evidence to be factually sufficient
to support the jury's verdict. Points of error one, two and three are overruled.

 Point of error four claims the trial court erred in allowing the State "to misjoin
offenses resulting in multiple convictions and punishments." Ytuarte's brief acknowledges
the two offenses were part of a single criminal episode but argues that since the State did
not elect which count to proceed on, and the trial court did not conditionally submit the
counts to the jury with an instruction to convict on only one count, we should reform the
judgment to reflect conviction on only one count. Ytuarte's argument mistakenly supposes
the State was charging two different means by which he committed the single offense of
aggravated assault. The indictment clearly charges two separate offenses of aggravated
assault, the beating and the threats to kill Barbara, both of which occurred in a single
criminal episode.

 Pursuant to Tex. Pen. Code Ann. § 3.02 (a) (Vernon Supp. 2002), "[a] defendant
may be prosecuted in a single criminal action for all offenses arising out of the same
criminal episode." See also Graham v. State, 19 S.W.3d 851, 852, n.2 (Tex. Crim. App.
2000). "[W]here the State properly joins two offenses for trial pursuant to § 3.02, the
defendant, upon timely motion, has an absolute right to a severance of the offenses." Id.
(citing Tex. Pen. Code Ann. § 3.04 (a) (Vernon Supp. 2002)). The record does not
reflect a severance was requested. See Coleman v. State, 788 S.W.2d 369, 373 (Tex.
Crim. App. 1990).

 Ytuarte's claim of misjoinder is based upon the two convictions having been
obtained from a single indictment. The authority Ytuarte relies upon is no longer the law. 
See Howell v. State, 795 S.W.2d 27, 28 (Tex. App.--El Paso 1990, pet. ref d). Further,
any claim of misjoinder has been waived as it was not raised prior to trial. See McGowen
v. State, 885 S.W.2d 285, 291 (Tex. App.--Beaumont 1994, no pet.). Point four is
overruled.

 Ytuarte argues in point of error five the trial court erred in overruling his hearsay

objections. Ytuarte complains of the statements made by Barbara to Detective Gary Platt.
The State offered the statements as an excited utterance. See Tex. R. Evid. 803(2). The
trial court overruled defense counsel's objection and permitted the testimony. We review
the trial court's decision for an abuse of discretion and will uphold the trial court's ruling
if it is within the zone of reasonable disagreement. See Salazar v. State, 38 S.W.3d 141,
153-54 (Tex. Crim. App.), cert. denied, ___U.S.___, 122 S.Ct. 127, 151 L.Ed.2d 82
(2001).

 Detective Platt spoke with Barbara about 3:30 the afternoon after the attack. He
testified Barbara was coherent, intelligent, and in a lot of pain. According to Detective
Platt, Barbara was willing and cooperative, very upset and tearful, and crying. He
described her emotional condition as "tearful and distraught, very shaken, very upset." 
As she described the incident, she became more tearful and upset. Detective Platt said,
"Yes" when asked if Barbara still appeared to be under distress from the traumatic,
exciting event that had taken place the night before, and when asked if she made statements
about what had happened while still under that stress. 

 Rule 803 (2) provides "[a] statement relating to a startling event or condition made
while the declarant was under the stress of excitement caused by the event or condition"
is not excluded by the hearsay rule. See Tex. R. Evid. 803 (2).

 This exception is founded on the belief that the statements made are
involuntary and do not allow the declarant an adequate opportunity to
fabricate, ensuring their trustworthiness. Couchman, 3 S.W.3d at 159.[ (2)] To
determine whether a statement qualifies as an excited utterance, (1) the
statement must be the product of a startling occurrence, (2) the declarant
must have been dominated by the emotion, excitement, fear, or pain of the
occurrence, and (3) the statement must be related to the circumstances of the
startling occurrence. Id. Other factors the court may consider are whether
the statement is spontaneous or in response to questions and how much time
has elapsed between the startling event and the statement. See Wood v. State,
18 S.W.3d 642, 652 (Tex. Crim. App. 2000); Bondurant v. State, 956
S.W.2d 762,766 (Tex.App.--Fort Worth 1997, pet. refd).


Biggins v. State, 73 S.W.3d 502, 504 (Tex. App.--Fort Worth 2002, no pet.).


 The record does not reflect there was a startling event other than the attack itself.
Cf. Hunt v. State, 904 S.W.2d 813, 815 (Tex. App.--Fort Worth 1995, pet. ref'd) (An
eleven-year-old girl was sexually assaulted and three months later, she saw a television
show about a young rape victim and began to cry uncontrollably. Her mother asked why
she was crying and the girl told her about the rape.) Therefore, approximately seventeen
hours elapsed between the startling event and the statements. Cf Parks v. State, 843
S.W.2d 693, 697 (Tex. App.--Corpus Christi 1992, pet. ref'd) (Six-hour delay, together
with several intervening events declarant went to the hospital, was sedated, and had
surgery--tended to attenuate the shock). In this case, Barbara made a trip to the hospital
alone and after waiting some time returned home. Connie then took her to another
hospital. After treatment and sedation, Detective Platt questioned her. The record
indicates Barbara's statements, though possibly given in a narrative form, were made in
response to Detective Platt's questions. As Detective Platt testified, "I just interviewed
her, and I asked her to give her account of what transpired." Barbara's statements were
a narrative account of past events, made in response to questions designed to elicit just
such an account. Barbara was undeniably upset, but that does not make her statements an
excited utterance.

 The State cites Zuliani v. State, 52 S.W.3d 825 (Tex. App.--Austin 2001, pet.
granted), in support of its contention the statement was an excited utterance. One of the
issues on which petition has been granted is the admission of hearsay statements made by
the victim to an officer. The court in Zuliani found those statements were admissible as
excited utterances. Zuliani is distinguishable from the present case; to the extent it is not,
we decline to follow it. The Zuliani court recognized the statements were made twenty
hours after the incident, the declarant did not appear excited or startled, the statements
were not spontaneous, the statements were made with ample time for reflection, and the
statements were made with some deliberation. Id. at 828. Nevertheless, the court found
the declarant's demeanor was different when Zuliani was outside the house, her injury had
not been treated because Zuliani feared arrest if they went to the emergency room, and the
declarant said if Zuliani were jailed, she feared what he would do when released. The
court then concluded the declarant was still under the stress of excitement caused by the
incident and it was not unreasonable for the trial court to find the stress was unabated until
family and law enforcement were present to shield her from Zuliani. Id.

 In this case, the statements were made after a lengthy lapse of time. During that
time Barbara sought medical treatment, once on her own and later with Connie, was
treated and sedated. There was a considerable period of time before the statements were
made that Ytuarte was not in close proximity to Barbara. The statements were made with
time for reflection and were not spontaneous. We conclude Barbara was not "dominated
by the emotion, excitement, fear, or pain of the occurrence" when the statements were
made. This conclusion is not within the zone of reasonable disagreement and the trial
court's admission of the hearsay evidence constituted an abuse of discretion. We must,
therefore, determine whether the error is harmful. See Tex. R. App. P. 44.2 (b).

 If the error does not affect Ytuarte's substantial rights, we disregard it under Rule
44.2 (b). See Dorsey v. State, 24 S.W.3d 921, 930 (Tex. App.--Beaumont 2000, no pet.). 
When the error had a substantial and injurious effect or influence on the jury's verdict, a
substantial right is affected. Id. Without Barbara's statement to Detective Platt, there was
no evidence to support the jury's finding Ytuarte guilty of count two in the indictment, that
Ytuarte intentionally and knowingly used a deadly weapon to threaten Barbara with
imminent bodily injury. Accordingly, we must find the error in admitting the testimony
had a substantial and injurious influence on the verdict as it relates to count two.

 There is however, other evidence supporting the conviction for count one, that
Ytuarte intentionally and knowingly caused serious bodily injury to Barbara by beating her.
As noted above, Barbara identified her attacker as her husband to Sandy Rogers. Rogers'
testimony regarding the extent of Barbara's injuries, including a concussion, was
uncontested. Connie Ytuarte testified that Jimmy Ytuarte told her he hit Barbara. 
Accordingly, we cannot say the error had a substantial and injurious effect on the jury's
verdict in count one. Point of error five is sustained, therefore, only as to count two.

 Point of error six asserts the trial court erred in overruling an objection made during
the State's closing argument that counsel was arguing evidence not in the record. The
State argued: "Folks, you've got to believe that before she went up to the Sheriff's office
that day, she was back with her husband. They talked about it. He said, "Just go down
there and drop charges. It's easy as that, and it's allover with.'" Defense counsel
objected and the State argued he was allowed to make inferences from the testimony. The
trial court overruled the objection.

 Whiting held "any reasonable deduction from the evidence" is within the scope of
proper jury argument. Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990).
"Counsel is allowed wide latitude without limitation in drawing inferences from the
evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in
good faith." Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).
"Conversely, the jury argument must be extreme or manifestly improper, or inject new and
harmful facts into evidence to constitute reversible error." Id.

 Ytuarte does not specify why the State's deduction is unreasonable. The record
reflects Barbara had returned to her husband. She told Investigator Smith she did not want
to press charges. Barbara also told the prosecuting attorney she did not want charges to
be filed. When informed by Smith that Ytuarte would be prosecuted anyway, Barbara
began to weep heavily and asked, "Are you saying that even if I don't give a statement,
that you're going to prosecute anyway or you're going to file the charges anyway?" Smith
told her yes and Barbara said, "Then all I can say is thank you." Smith also testified he
gave Barbara information on public representation because she wanted an attorney for a
protective order and divorce but could not afford to hire an attorney. Considering the
evidence, it is not unreasonable to infer that Ytuarte suggested she drop the charges.

 Furthermore, Ytuarte merely recites new and damaging facts were injected into the
case. No analysis is performed explaining how the "new facts" could have possibly
damaged Ytuarte's case. Considering the nature of the offense and the evidence adduced,
we are not convinced the State's inference that Ytuarte told Barbara to drop the charges
caused any harm. Accordingly, we overrule point or error six.

 In point of error seven, Ytuarte contends the trial court erred in denying his request
for a charge on a lesser included offense. Defense counsel requested a charge on the lesser
included offense of assault. To be entitled to a charge on the lesser-included offense of
assault, it had to be possible for the jury in this case to rationally reject the greater offense
by finding that Ytuarte assaulted Barbara, but did not cause her serious bodily injury. (3) 
See Hernandez v. State, 10 S.W.3d 812, 820 (Tex. App.--Beaumont 2000, pet. ref'd). 
Ytuarte's brief asserts "he was guilty of only assault" but fails to enlighten this court as
to how he was guilty of only assault. There are no references to the record and no
application of the law cited to the facts of this case. See Tex. R. App. P. 38.1(h).
Elsewhere in the brief, Ytuarte did contend there was no evidence Barbara sustained a
serious bodily injury but as discussed above, we have determined otherwise. The evidence
that Barbara's concussion constituted a serious bodily injury was unchallenged. Point of
error seven is overruled.

 Ytuarte's final point argues the trial court erred in denying his motion for a mistrial.
The motion was made after the following exchange: 

 [Defense counsel]: Okay. Now, just for the record, did you see any of the
altercation or any of the fight that took place between
Mrs. Ytuarte and these girls?

 [Witness]: No, but the girls acted like they were real mad at her, though,
because Jimmy [Ytuarte] and her-Jimmy and Barbara were
fighting-you know, sitting there arguing over-I guess that one
girl. I just wanted to get Jimmy out of there, because, you
know, he's on parole, and I was trying to get him away from
there, because he didn't need the trouble.

Counsel asked that the response be stricken from the record and the jury instructed to
disregard it. The trial court granted both requests. Counsel then moved for a mistrial, the
trial court denied the motion. 

 "Generally, harm from testimony that implies that the defendant has been previously

incarcerated will be cured by a prompt instruction to the jury to disregard that evidence."
Murray v. State, 24 S.W.3d 881, 892 (Tex. App.--Waco 2000, pet. refd) (citing Hughes
v. State, 878 S.W.2d 142, 154 (Tex. Crim. App. 1992); Tennard v. State, 802 S.W.2d
678, 685 (Tex. Crim. App. 1990)). See also Freeman v. State, 985 S.W.2d 588, 589
(Tex. App.--Beaumont 1999, pet. ref d). Here, the witness' testimony was followed by
an immediate instruction to disregard and the testimony was not so inflammatory as to
suggest that the curative instruction was inadequate. Thus, we find the trial court did not
err in denying Ytuarte's motion for a mistrial. Point eight is overruled.

 Having found reversible error only as to Count Two, the trial court's judgment on
Count One in Cause No. B0000173-R is affirmed. The judgment of the trial court on
Count Two in Cause No. B0000173-R, is reversed and the cause remanded for a new trial.


 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

 

 ________________________________

 DON BURGESS

 Justice


Submitted on August 30, 2002 

Opinion Delivered October 16, 2002

Do not publish


Before Walker, C.J., Burgess, and Gaultney, JJ.

1. "'Serious bodily injury' means bodily injury that creates a substantial risk of death
or that causes death, serious permanent disfigurement, or protracted loss or impairment
of the function of any bodily member or organ." Tex. Pen. Code Ann. § 1.07(46)
(Vernon 1994)
2. Couchman v. State, 3 S.W.3d 155, 158 (Tex. App.--Fort Worth 1999, pet. ref'd).
3. Due to our disposition of point of error five, we address Ytuarte's claim only as
it relates to count one.