

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00175-CR

**KORRINN KQUAME MCGRUDER,**

                                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                              **Appellee**

---

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 20-01066-CRF-272

---

## MEMORANDUM  OPINION

---

In two issues, appellant, Korrinn Kquame McGruder, challenges his convictions for one count of assault family violence-strangulation with a prior family violence conviction ("Count 1") and one count of assault family violence with a prior family violence conviction ("Count 2"). *See* TEX. PENAL CODE ANN. § 22.01(b)(2).  We affirm.[1]

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

**The Complainant's Statements to Police**

In his first issue, McGruder contends that the trial court abused its discretion by allowing the complainant's hearsay statements to be testified to as excited utterances under Texas Rule of Evidence 803(2). *See* TEX. R. EVID. 803(2). McGruder argues that body-camera videos of Officer Frazier Honkomp of the Bryan Police Department, as well as a 911 call, undermine Officer Honkomp's testimony that the complainant was dominated by the emotions, excitement, fear, or pain of the event; thus, this evidence was not admissible under the excited-utterance exception to the hearsay rule.

STANDARD OF REVIEW & APPLICABLE LAW

The admissibility of an out-of-court statement under exceptions to the general hearsay rule is within the trial court's discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). The trial court abuses its discretion if its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.*

As stated earlier, the complained-of evidence was admitted under the excited-utterance exception to the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2); *see Zuliani*, 97 S.W.3d at 595. In determining whether a hearsay statement is admissible as an excited utterance, the court may consider a number of factors, including the length of time between the occurrence and the statement, the nature of the declarant, whether the statement was made in

response to a question, and whether the statement is self-serving. *Apolinar v. State*, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005). These are simply factors to consider; they are not, by themselves, dispositive. *Zuliani*, 97 S.W.3d at 596. The critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement. *Id.*

DISCUSSION

Officer Honkomp responded to a 911 call alleging domestic violence. When he arrived, Officer Honkomp spoke with the complainant, who explained that McGruder had hit her, choked her, and pulled her hair. At trial, Officer Honkomp described the complainant's demeanor as follows:

> As I contact her outside, so we were by the road on Finfeather in a parking lot there. She came out. She seemed nervous and a little shaken up. As she began talking to me about the event that had taken place that night, her hands were shaky. Her voice was shaky. Her eyes got watery and voice got nasally. I could tell she was kind of holding back crying.
>
> She told me she was scared as cars were passing by. She kept looking around as cars passing by afraid that the suspect or someone that knew the suspect would see her.

Counsel for McGruder objected to Officer Honkomp's testimony as hearsay. The State responded that the foregoing testimony laid the predicate for an excited utterance, which is an exception to the hearsay rule. *See* TEX. R. EVID. 803(2). The trial judge agreed with the State and overruled McGruder's objection.

Thereafter, Officer Honkomp recounted that "[the complainant] was also nauseous while—as I was speaking to her" and that "she was afraid that [McGruder] would retaliate against her." Officer Honkomp testified that nausea is a sign and symptom of strangulation, and he also recalled that the complainant "was dry heaving and throwing up" during the interview that evening.

Later in Officer Honkomp's testimony, the State offered State's Exhibits 1-A, 1-B, 1-C, and 1-D—videos from Officer Honkomp's body camera—for admission into evidence. Counsel for McGruder objected to the videos as hearsay and a violation of the Confrontation Clause of the United States Constitution. While State's Exhibit 1-A was playing, counsel for McGruder further argued that the video did not show that the complainant is "in the throes of excited utterance. She's not, you know, upset by this. She seems to be having a conversation with the officer and doesn't seem to meet the exception that the prosecutor laid forth earlier that this is some sort of exception to [the] hearsay rule." The trial court overruled McGruder's objections to State's Exhibits 1-A, 1-B, 1-C, and 1-D.

Later at trial, the State presented State's Exhibits 37 and 38 for admission into evidence through the testimony of Kris Fox, the custodian of records for Brazos County 911 District. These exhibits are the audio recording of the 911 call and the written transcript of the 911 call. Counsel for McGruder objected to State's Exhibit 37 (the audio recording of the 911 call) on hearsay grounds and to State's Exhibit 38 as an improper

comment on the weight of the evidence. The trial court overruled McGruder's objection to State's Exhibit 37 and admitted it for all purposes. The trial court also overruled McGruder's objection to State's Exhibit 38, but only admitted the exhibit for the purpose of the record.

Regarding Officer Honkomp's testimony and State's Exhibits 1-A, 1-B, 1-C, 1-D, and 37, we cannot say that the trial court's admission of this evidence as excited utterances is outside the zone of reasonable disagreement. Specifically, Officer Honkomp testified that the complainant was nervous, scared and shaken up; that her voice was shaky; that her eyes were watery and her voice was nasally; and that she was throwing up and dry heaving. This is enough to show that the complainant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement. *See Zuliani*, 97 S.W.3d at 596; *see also Apolinar*, 155 S.W.3d at 187.

However, despite the foregoing, McGruder emphasizes that the complainant's statements to Officer Honkomp were not excited utterances because the videos from Officer Honkomp's body camera show the complainant to be calm and collected, and because a significant amount of time passed between the incident and the interview. We disagree.

Although the complainant recounted the incident in a calm tone of voice in the 911 call and the videos from Officer Honkomp's body camera, a witness's tone of voice when making a statement is not, standing alone, dispositive of the key question of whether the

witness was still under the stress of excitement from viewing a startling event at the time the statement was made. *See, e.g., Rios v. State*, 2019 Tex. App. LEXIS 7835, at **33-34 (Tex. App.—El Paso Aug. 28, 2019, pet. ref'd) (citing *Daisy v. State*, No. 05-01-01791-CR, 2002 Tex. App. LEXIS 8117, at *6 (Tex. App.—Dallas Nov. 15, 2002, no pet.) (not designated for publication) (recognizing that a witness need not be hysterical to be dominated by the emotions or fear of a startling event)). "To the contrary, when a witness makes a statement in a calm manner, it may still be considered an excited utterance if there is evidence that the witness was nevertheless still upset, scared, or otherwise in the grip of emotions as the result of a startling event when she made her statement." *Id.* at *34 (citing *Biggins v. State*, 73 S.W.3d 502, 504 (Tex. App.—Fort Worth 2002, no pet.) (concluding that the trial court did not abuse its discretion by admitting the victim's statements to police as an excited utterance, despite the fact that the victim appeared to have "calmed down" prior to making her statements, because she was still in the "grip of the emotions, excitement, fear, or pain" from her father's assault on her).

Here, Officer Honkomp testified about the complainant's fear and the fact that she appeared to be nervous, scared, shaken up, on the verge of crying, and nauseated at the time of the interview. Moreover, the body-camera videos also showed that the complainant repeatedly moved around Officer Honkomp's vehicle to try to obscure the fact that she was speaking to police, indicating that she was still dominated by fear of the event or condition at the time of the statement. This is further demonstrated when the

complainant told Officer Honkomp that she believed McGruder would kill her if he found out she called the police. Given this evidence, we conclude that there is evidence in this record showing that the complainant was still upset, scared, or otherwise in the grip of emotions as a result of the incident of domestic violence.

McGruder also asserts that the complainant's statements were not excited utterances because a significant time passed between the incident and when the interview occurred. Officer Honkomp testified that he received a dispatch regarding this incident at 11:02 p.m. on the night in question. The complainant told Officer Honkomp that the incident of domestic violence began when McGruder ordered the complainant to get out of his house at 10:21 p.m. There is no evidence as to what time the assault ended, but the record does show that the complainant called 911 at 10:59 p.m. Even if we were to presume that the incident of domestic violence occurred at 10:21 p.m., this delay of approximately forty minutes is not enough, after reviewing the evidence in light of the factors, to show that the complainant's statements to Officer Honkomp were not excited utterances. *See Zuliani*, 97 S.W.3d 589, 596 (concluding that the trial court did not abuse it discretion by admitting statements under the excited-utterance exception where the time delay between the event and the statement was twenty hours); *Dixon v. State*, 358 S.W.3d 250, 261 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (concluding that the trial court did not abuse it discretion by admitting statements under the excited-utterance exception where the time delay between the event and the statement was one hour); *see*

McGruder v. State                                                                                           Page 7

*also Potts v. State*, Nos. 01-02-00919-CR & 01-02-00920-CR, 2003 Tex. App. LEXIS 10407, at

*19 (Tex. App.—Houston [1st Dist.] Dec. 11, 2003, pet. ref'd) ("Although complainant's

statements regarding the kidnapping and assault were made to Carter approximately

three hours after she was found, they were made while complainant was still dominated

by the emotions and pain of the physical and sexual assault.").

Based on the foregoing, we cannot conclude that the trial court abused its

discretion by admitting Officer Honkomp's testimony regarding what the complainant

told him that evening, as well as State's Exhibits 1-A, 1-B, 1-C, 1-D, and 37.[2] We overrule

McGruder's first issue.

## Charge Error

In his second issue, McGruder asserts that the trial court erred by submitting a

deadly weapon special issue to the jury in the court's charge during the guilt-innocence

phase of trial.[3] McGruder argues that the deadly weapon special issue should not have

---

[2] Although McGruder alludes to State's Exhibit 38 (the written transcript of the 911 call) in his brief, he does not specifically argue how the trial court abused its discretion by admitting this exhibit. *See* TEX. R. APP. P. 38.1(i). And to the extent it can be argued that McGruder's complaint about State's Exhibit 37 (the audio recording of the 911 call) somehow extends to State's Exhibit 38, we note that McGruder's complaint on appeal—that the 911 call should be excluded as inadmissible hearsay—does not comport with the objection made at trial—that the 911 call is an improper comment on the weight of the evidence. *See Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (noting that where a trial objection does not comport with the issue raised on appeal, appellant has preserved nothing for review); *see also Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (op. on reh'g) ("[A]n objection stating one legal theory may not be used to support a different legal theory on appeal.").

[3] The deadly weapon special issue was submitted in the guilt-innocence charge as to Counts 1 and 2. The jury found that McGruder did use a deadly weapon as to Count 1 but did not use a deadly weapon as to Count 2.

been included in the guilt-innocence charge because the indictment did not include a deadly weapon allegation, the deadly weapon finding affected a punishment issue (parole eligibility), and because McGruder had elected the trial court to assess punishment.

STANDARD OF REVIEW & APPLICABLE LAW

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). If we find error, then we consider whether to reverse based on the resultant harm. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (citing *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020)); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). If the error is preserved, as it was here, the record must demonstrate that appellant suffered "some harm." *Wooten v. State*, 400 S.W.3d 601, 608 (Tex. Crim. App. 2013) (citing *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003) (per curiam)); *see Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013). "Some harm" means actual harm and not merely a theoretical complaint. *Rogers v. State*, 550 S.W.3d 190, 191 (Tex. Crim. App. 2018). Reversal is required if the error was calculated to injure the rights of the defendant. *Id.* at 192; *see Almanza*, 686 S.W.2d at 171. In evaluating harm, we review the whole record, including the jury charge, the state of the evidence, the arguments of counsel, and other relevant information. *Almanza*, 686 S.W.2d at 171.

We are not persuaded by McGruder's contention that the guilt-innocence charge was erroneous for several reasons. First, it is undisputed that the State provided written notice of its intention to seek an affirmative deadly weapon finding. *See Brooks v. State*, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993) ("A defendant is entitled to notice that the State will seek an affirmative finding that a deadly weapon was used during the commission of the charged crime. Such notice need not be contained in the indictment under which the defendant is ultimately tried. Rather, the defendant is simply entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution." (internal citations & quotations omitted)).

Next, the Court of Criminal Appeals has specifically stated that: "We agree that the *better* practice is to submit the deadly weapons special issue charge at the guilt/innocence phase of trial."[4] *Hill v. State*, 913 S.W.2d 581, 586 (Tex. Crim. App. 1996)

---

[4] We recognize that, in *Fann v. State*, the Court of Criminal Appeals stated that: "When the punishment hearing is held before the trial judge, the trial judge is the trier of fact as to the punishment issues. An affirmative finding can be and is perhaps more suited to be a punishment issue." 702 S.W.2d 602, 604-05 (Tex. Crim. App. 1986) (citations omitted). However, nothing in the *Fann* opinion, which predates *Hill*, mandates that a deadly weapon special issue be decided only during the punishment phase. *See id.* at 604 ("[W]here, as in the instant case, the trial judge is the trier of fact at the punishment stage and he has heard evidence on the issue, he has the authority to make an affirmative finding as to the use or exhibition of a deadly weapon *if the jury has not decided the matter*." (emphasis added)); *see also Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1986) (stating that the jury, when it is the trier of fact for guilt-innocence, may make an affirmative finding on a deadly weapon special issue); *Vasquez v. State*, 25 S.W.3d 826, 827 n.1 (Tex. App.—Houston [1st Dist.] 2000), *aff'd on other grounds*, 56 S.W.3d 46 (Tex. Crim. App. 2001) ("The trial judge may 'make' an affirmative deadly weapon finding only when the judge is the trier of fact, either at the guilt phase or the punishment phase." (citing *Hooks v. State*, 860 S.W.2d 110, 112 n.4 (Tex. Crim. App. 1993); *Fann*, 702 S.W.2d at 604-05; *Butler v. State*, 936 S.W.2d 453, 461 (Tex. App.—Houston

(emphasis in original). And while a deadly-weapon finding is used to calculate a prisoner's parole eligibility date, *see Johnson v. State*, 233 S.W.3d 420, 424 (Tex. App.—Fort Worth 2007, pet. ref'd), the Court of Criminal Appeals has "never held that it is improper to submit the deadly weapons special issue at the guilt-innocence phase." *Id.* (citing *Luken v. State*, 780 S.W.2d 264, 268 (Tex. Crim. App. 1989); *McIntosh v. State*, 855 S.W.2d 753, 771 (Tex. App.—Dallas 1993, pet. ref'd)); *see, e.g., Quiroz v. State*, No. 03-19-00478-CR, 2021 Tex. App. LEXIS 289, at *18 (Tex. App.—Austin Jan. 14, 2021, no pet.) (mem. op., not designated for publication) ("As an initial matter, we note that *a trial court must enter a deadly weapon finding when a jury makes an affirmative finding that a deadly weapon* "was used or exhibited during the . . . commission of a felony offense; or . . . immediate flight from the commission of a felony offense; and . . . the defendant . . . used or exhibited a deadly weapon; or . . . was a party to the offense and knew that a deadly weapon would be used or exhibited." (emphasis added) (quoting TEX. CODE CRIM. PROC. ANN. art. 42A.054(b)-(d))).

And although it was addressing potential harm associated with the failure to submit a deadly weapon special issue in the guilt-innocence charge, the *Luken* Court emphasized that:

> Evidence of any weapon used would invariably be admissible at the guilt stage of trial as res gestae of the offense. That the specific character of weapon or manner of its use was erroneously made an issue to be resolved

---

[14th Dist.] 1996, pet. ref'd))). Moreover, it is particularly telling that McGruder concedes that he has found no authority holding charge error under the circumstances in this case.

concurrently with the question of guilt or innocence could not, in our view, have so inflamed or distracted the jury as to deprive appellant of a fair and impartial trial.

780 S.W.2d at 268-69. McGruder's use of his hands, in a manner capable of causing serious bodily injury or death to the complainant by strangling her, is res gestae of the offense and properly considered during the guilt-innocence phase of trial. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) ("This evidence is considered 'res gestae,' under the reasoning that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence."); *see also Freeman v. State*, No. 10-12-00183-CR, 2013 Tex. App. LEXIS 8566, at **7-8 (Tex. App.—Waco July 11, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that the trial court did not abuse its discretion by admitting evidence that the defendant showed the child victim a pornographic video that provided pertinent background information that assisted the jury in understanding the underlying sexual assaults, specifically the defendant's efforts to make the child victim comfortable with the actual sexual acts perpetrated).

Based on the foregoing, we cannot conclude that it was error to submit the deadly weapon special issue in the court's charge for the guilt-innocence phase. We therefore overrule McGruder's second issue.

## Conclusion

Having overruled both of McGruder's issues on appeal, we affirm the judgments of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson,
      and Justice Smith
Affirmed
Opinion delivered and filed March 1, 2023
Do not publish
[CR25]

