# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-00-00387-CR

---

**Gerald Zuliani, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. 544925, HONORABLE MIKE DENTON, JUDGE PRESIDING

---

A jury convicted Gerald Zuliani of assault with bodily injury and assessed sentence at one year in jail. Zuliani attacks the court's overruling of a hearsay objection, challenges omissions from and inclusions in the jury charge, and contends that the evidence is factually insufficient to support the conviction. We will affirm the judgment.

There is no dispute that Zuliani pushed Patti Dwinell and that she fell backwards, hit her head, and cut her scalp; the dispute is over the circumstances surrounding that incident. Zuliani and Patti Dwinell lived together for about eighteen months before the incident. Dwinell had thyroid surgery and was about to undergo radiation therapy when she and Zuliani had an argument which escalated into a physical struggle. Dwinell has told different versions of the incident. The day after the incident, Dwinell said Zuliani was restraining her, trying to force her to kiss him; she pushed away, knocking him down, and he responded by pushing her and causing her injury. The day after the incident, Dwinell was fearful and pleading for help in telephone calls outside Zuliani's hearing.

At trial, however, Dwinell explained the incident by exculpating Zuliani, saying he took a cigarette out of her mouth to enforce her doctor's order that she not smoke. Dwinell said she slapped him twice, he restrained her to stop the slapping, she pushed away and shoved him down. When he got up, she swung at him again and he put his arm out and pushed her away, causing her injury.

By point of error two, Zuliani asserts that the court erred by permitting Judy Tobey to testify over his hearsay objection about what Dwinell told her about the incident. The court allowed Tobey's testimony, finding that Dwinell's statements to her were an excited utterance within the rule providing that a "statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition" is not excluded by the hearsay rule regardless of the availability of the declarant. *See* Tex. R. Evid. 803(2). Zuliani contends that the statements were not within the exception because too much time passed between the altercation and the statements and because Dwinell's demeanor was inconsistent with the definition of excited utterance.

We review the admission of evidence for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). That means we will affirm the trial court's decision if it is within "the zone of reasonable disagreement." *Id.* In discussing application of the excited utterance exception, the court of criminal appeals recently reiterated that

> [i]t is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. *See Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995); *Penry v. State*, 903 S.W.2d 715, 750-51 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977, 133 L. Ed. 2d 408, 116 S. Ct. 480 (1995); *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 963, (1993). The

> critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *McFarland,* 845 S.W.2d at 846.

*Salazar*, 38 S.W.3d at 154. The *Salazar* court cited several cases and summarized their holdings regarding the passage of time. *See id.* (citing *Wood v. State*, 18 S.W.3d 642, 652 (Tex. Crim. App. 2000) (hearsay statement properly excluded because separated from event it concerned by ten to twelve hours, and declarant did not act excited or nervous in interim); *Lawton*, 913 S.W.2d at 553 (hearsay statement by eyewitness properly admitted as excited utterance, even though an hour separated event from statement, because of magnitude of crime witnessed and because officer testified that declarant was excited and upset when making statement); *McFarland*, 845 S.W.2d at 846 (victim's statement properly admitted as excited utterance because she was still under physical and emotional stress of having been stabbed 43 times when discovered by police)). In *Salazar*, the court examined the admission of testimony about a victim's complaints of pain from a previous assault. The two-year-old victim/declarant told witnesses she did not want to take off her jacket. When the witnesses removed the jacket, the declarant cried out in pain; when asked, she said the defendant had inflicted her injury. Despite the absence of testimony regarding how much time had passed between the infliction of the injury and the accusation, the court found no abuse of discretion in the admission of the evidence under the excited utterance exception. *Id.* at 154.

We conclude that the trial court did not abuse its discretion in admitting Tobey's statements. Dwinell made her statements to Tobey twenty hours after the incident. Dwinell was talking on the telephone when first seen by a deputy and did not appear excited or startled when making her statement to Tobey. Even though her statements were not spontaneous, were made with

3

ample time for reflection, and were made with some deliberation at the time of making, Tobey said that Dwinell appeared scared and withdrawn. Dwinell had not been separated from Zuliani since the incident. Tobey and the deputy were there only because Dwinell had whispered "help me, help me, help me" to Tobey's husband during a telephone conversation. Dwinell's demeanor, communicativeness, and communications were different when Zuliani was outside the house. Her scalp injury, diagnosed as needing stitches, had not been treated—apparently because Zuliani feared that he would be arrested if they went to an emergency room. (He had taken her to a minor-emergency clinic that refused to treat her because of her recent surgery.) Dwinell also said that, if Zuliani were jailed, she feared what he would do when released. This combination of factors convinces us that the trial court did not err by concluding that Dwinell was still under the stress of excitement caused by the incident. It was not unreasonable to find that Dwinell's stress was unabated until family and law enforcement were around to shield her from Zuliani. Finding no error, we overrule point two.

By his third point of error, Zuliani argues that the trial court's charge was deficient because it failed to limit the definition of the culpable mental states of "intentionally" and "knowingly" to the results of the defendant's conduct. The court provided the following definitions:

> A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

4

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the results of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Zuliani objected and complains on appeal that these definitions permitted the jury to convict him for simply intentionally or knowingly pushing Dwinell regardless of whether he intentionally or knowingly injured her.

The State concedes that Zuliani has correctly assigned error, but contends that the error was not harmful. *See Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). The court of criminal appeals recently reaffirmed that we use the standard of review for jury-charge error set out in the Code of Criminal Procedure and *Almanza v. State*, not the standards in the appellate procedural rules. *Huizar v. State*, 12 S.W.3d 479, 484-85 (Tex. Crim. App. 2000). The code states, "[T]he judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). Under *Almanza*, we examine the error in light of (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the arguments of counsel, and (4) any other relevant information. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

*The entire jury charge.* The court correctly stated the requisite mental state in the application paragraph. The court informed the jury that, if it found beyond a reasonable doubt that

5

Zuliani "intentionally, knowingly, or recklessly cause[d] bodily injury to PATTI DWINELL, by pushing PATTY DWINELL causing PATTI DWINELL's head to strike a piece of furniture, or by pushing PATTI DWINELL causing PATTI DWINELL's head to strike a candle holder, then you will find the Defendant guilty of the offense of assault." Thus the jury could find Zuliani guilty only if it found that Zuliani intended, not merely his conduct in pushing her, but also the bodily injury that resulted from his conduct.

*The record*. As discussed below, sufficient evidence supports the jury's finding.

*Arguments of counsel*. The State did not argue that it had to prove only that Zuliani intended to push Dwinell. Rather, the State argued that Zuliani intentionally, knowingly, or recklessly caused Dwinell's bodily injury.

Because the application paragraph correctly charged the jury on the culpable mental state, the evidence supported a finding of the applicable mental state, and the arguments of counsel tracked the correct formulation in the application paragraph, we conclude that Zuliani was not harmed by the incorrect definition. We overrule point three.

By point of error four, Zuliani complains that the court improperly charged the jury on his right to act in self-defense. The penal code provides that "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31 (West Supp. 2001). Zuliani contends that, in the charge, the court erroneously predicated his right to act in self-defense on a reasonable belief that Dwinell's use or attempted use of unlawful force would cause him bodily injury. The court charged the jury as follows:

6

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. A person is under no obligation to retreat to avoid the necessity of repelling or defending, with force less than deadly, against an attack or threatened attack.

When a person is attacked with unlawful force, or he reasonably believes he is under attack with unlawful force, *and there is created in the mind of such person a reasonable expectation or fear of some bodily injury,* then the law excuses or justifies such person in resorting to force to the degree that he reasonably believes is immediately necessary, viewed from his standpoint at the time, to protect himself from attack or attempted attack. It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his person from apparent danger as fully and to the same extent as he would had the danger been real provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such force was immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

By the term "reasonable belief" as used herein is meant a belief that would be held by an ordinary and prudent person in the same circumstances as defendant.

Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant did push the complainant, PATTI DWINELL, but you further find from the evidence, or you have a reasonable doubt thereof, that viewed from the standpoint of the defendant at the time, from the words or conduct, or both, of PATTI DWINELL it reasonably appeared to the defendant that his person was in danger *of bodily injury and there was created in his mind a reasonable expectation or fear of bodily injury* from the use of unlawful force at the hands of PATTI DWINELL, and that acting under such apprehension and reasonably believing that the use of force on his part was immediately necessary to protect himself against PATTI DWINELL'S use or attempted use of unlawful force, the defendant did push PATTI DWINELL to defend himself, then you will acquit the defendant or, if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under said circumstances, then you should give the defendant the benefit of that doubt and say by your verdict not guilty.

(Italics added.) Zuliani objected to the inclusion of the italicized language in the first paragraph and suggested the court say instead "when there is created in the mind of such person a reasonable

expectation that another is using or attempting to use unlawful force against him." Zuliani complained that the "fear of bodily injury" language imposed an element not required by the statute. Zuliani objected to similar defects in the application (fourth) paragraph. He requested that the court "substitute for the current application paragraph, the application paragraph that we have submitted in our defendant's requested instruction number one, so that it is made clear to the jury that the defendant would have the right to act in self-defense, if he pushed Patti Dwinell to prevent her from hitting, slapping, or pushing him. As oppose[d] to having to believe that her conduct was in fact going to cause him bodily injury."[1] The court overruled Zuliani's objections and declined to give his requested instructions.

The State contends that the "fear of bodily injury" language does not create an additional required source for his fear, but instead sets the standard for the reasonableness of the force he used in response to his fear.

We conclude, based on the record, that the trial court's instruction did not harm Zuliani. The self-defense statute does not require that the defendant fear bodily injury; indeed, it does not mention bodily injury at all. *See* Tex. Penal Code Ann. § 9.31. The court's instruction would be harmful if the evidence permitted a finding that Zuliani feared Dwinell's use of unlawful force, but did not fear that she would cause him bodily injury. The trial court defined bodily injury as "physical

---

[1] The requested application paragraph is not in the appellate record. The county clerk's office has no record of Zuliani filing requested instructions with the county court. The State notes the absence of the instruction from the record, and Zuliani does not rebut that notation. The State does not assert, however, that Zuliani waived this error by failing to file the requested paragraph with the court. We conclude that his objection, coupled with the requested first paragraph quoted above (included in the reporter's record), was sufficiently specific to apprise the court of his objection.

pain, illness, or any impairment of physical condition." The only evidence that Dwinell used unlawful force was that she slapped Zuliani twice. Thus the instruction would be harmful to Zuliani if the jury believed that Dwinell slapped him but did not believe that he reasonably feared that she would cause him physical pain. Zuliani argues that Dwinell's weakness from her medical treatments created just such a situation; he contends that her actions could be an offensive or provocative touching, within the definition of assault,[2] without causing fear of bodily injury. We conclude, however, that no evidence supports Zuliani's theory. The threshold for "bodily injury"—physical pain—is low; no rational jury could believe the evidence that Dwinell slapped him, hit him, or pushed him down without also finding that she caused him at least physical pain. On these facts, the error in the instruction did not harm him and we overrule point of error four.

Zuliani complains by point of error five that the trial court erred by including in its charge an instruction on voluntary intoxication. The court instructed the jury that, "[v]oluntary intoxication does not constitute a defense to the commission of crime. For purposes of this section, 'intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." These sentences track the language in Texas Penal Code section 8.04, subsections (a) and (d). Zuliani objected, contending that the jury would consider the instruction a

---

[2] The statute defines three modes of assault: (1) intentionally, knowingly, or recklessly causing bodily injury, (2) intentionally or knowingly threatening with imminent bodily injury, or (3) intentionally or knowingly causing physical contact with another when the actor knows or should reasonably believe that the other will regard the contact as offensive or provocative. *See* Tex. Penal Code Ann. § 22.01(a) (West Supp. 2001). All three assaultive actions are, by definition, unlawful force, but only the first two mention bodily injury or implied fear of bodily injury. The trial court's instruction would allow Zuliani to defend himself lawfully only from the first two types of assault.

9

comment on the weight of the evidence. He also complained that, though there was evidence he had been drinking, there was no evidence that he was intoxicated. He complained finally that he had not suggested to the jury that he should be acquitted because he was intoxicated.

We find no harmful error in the giving of this instruction. Even if the defendant is not relying on intoxication as an excuse for committing the offense, giving the instruction is appropriate if there is evidence that might lead a jury to conclude that the defendant's intoxication excused his actions. *See Taylor v. State*, 885 S.W.2d 154, 157 (Tex. Crim. App. 1994). The court's statement of the applicable law was not a comment on the weight of the evidence. At worst, the instruction was superfluous. If Zuliani was not intoxicated and did not use intoxication as a defense, then the jury could simply ignore the instruction; if the jury believed he was intoxicated, the instruction correctly guided them to ignore the intoxication. Finding no error, we overrule point five.

By point of error one, Zuliani contends that the evidence is factually insufficient to support the judgment. We consider all the evidence in a neutral light and can set aside the jury's verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We must avoid substituting our judgment for that of the jury; we should not substantially intrude upon the jury's role as the sole judge of the weight and credibility given to witness testimony. *Johnson*, 23 S.W.3d at 7 (citing *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996)). Zuliani contends that the evidence was overwhelming that he was defending himself from Dwinell's attacks.

Zuliani points to the direct testimony supporting his theory. Dwinell herself testified that Zuliani put his arm out and pushed her away defensively as she swung at him. A sheriff's deputy testified that Zuliani told him substantially the same story on the night of the incident.

Zuliani downplays Tobey's testimony that, on the night after the incident, Dwinell painted Zuliani as the aggressor. He attacks this lone shred of evidence as second-hand, unreliable because the effects of Dwinell's surgery and the cold temperatures outside the house made Dwinell very tired, lethargic, and slow-thinking. He asserts that Dwinell's remarks on the night after the incident were self-serving, omitting her role as aggressor to avoid arrest. He points out that Dwinell's testimony left room for the possibility that Zuliani was acting in self-defense. He argues that the statement she gave law enforcement shortly after the incident (which resembled Tobey's testimony at trial) actually undercuts Tobey's testimony because it likewise omits Dwinell's aggressive acts.[3]

The jury also heard Dwinell's testimony regarding the nature of their relationship. There were other violent incidents between them. She tried to leave him before and after the incident, but continued to stay with him because she loved him. She wanted the charges dismissed.

The jury had to make a credibility choice between Dwinell's live testimony and her reported statements made just after the incident. They could weigh Dwinell's credibility against that of those reporting her statements. Was she bending the truth in court to keep the relationship together, to keep Zuliani out of jail, and to avoid Zuliani's revenge when released from jail, or was she bending it the day after the incident to keep herself out of jail and to punish Zuliani? We conclude

---

[3] The statement was admitted for purposes of impeaching Dwinell's trial testimony and not for the truth of the matters contained within it.

11

that the jury's resolution of these credibility decisions in favor of Zuliani's guilt is not manifestly unjust.

Because the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, we overrule point one.

## CONCLUSION

Having overruled all of Zuliani's asserted errors, we affirm the judgment.

—

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:  May 31, 2001

Publish

12