TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON REMAND







NO. 03-00-00387-CR






Gerald Zuliani, Appellant


v.


The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY

NO. 544925, HONORABLE MIKE DENTON, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 A jury convicted Gerald Zuliani of assault with bodily injury and assessed punishment
at one year in jail. See Tex. Pen. Code Ann. § 22.01(a)(1) (West 2003). Zuliani appealed his
conviction by four points of error. In his first point of error, Zuliani challenged the factual
sufficiency of the evidence supporting his conviction. Specifically, he claimed that the evidence was
factually insufficient to support the jury's finding that he did not act in self-defense. This court
found the evidence to be factually sufficient and affirmed the conviction. Zuliani v. State, 52 S.W.3d
825, 833 (Tex. App.--Austin, 2001). In our opinion, we held that the rejection of Zuliani's defense
issue was not against the great weight and preponderance of the evidence. Id. The court of criminal
appeals reversed our judgment, holding that when a defendant challenges the factual sufficiency of
a defense, as opposed to an affirmative defense, the reviewing court must do a two-pronged factual-sufficiency review. Zuliani v. State, 97 S.W.3d 589, 593-95 (Tex. Crim. App. 2003). Because we
addressed only the second prong, determining that the jury's finding was not against the great weight
and preponderance of the evidence, and did not address the first prong--whether the evidence was
too weak to support the finding, the court of criminal appeals remanded the case with instructions
to apply an additional factual-sufficiency analysis. After doing so, we reach the same conclusion that
we did on original submission.


BACKGROUND

 One evening in early February 1999, Zuliani got into an argument with his common-law wife, Patti Dwinell, who was in a weakened state from a recent surgery for thyroid cancer. Their
disagreement eventually escalated into a physical confrontation. The resulting injury to Dwinell is
undisputed: she suffered a cut on her scalp when her head hit a bookshelf. The cut was estimated
by a treating physician to have been approximately 1.5 inches in length. 

 The facts relating to the cause of her injury are disputed, however, because Dwinell
at different times provided different versions of the events of that evening. The first version was
recounted at trial by Dwinell's sister, Judy Tobey, over Zuliani's hearsay objections. Her testimony
was corroborated by that of her husband, David Tobey, who also testified at trial. The jury also
heard a second version of the events, favorable to Zuliani, told by Dwinell herself. According to Ms. Tobey, she was alerted to a potential problem by Dwinell's
coworker, Betty Soseby. Zuliani called Soseby the day after the alleged assault and told her that
Dwinell would not be coming in to work that day. Suspicious, Soseby called the Tobeys that
evening. Mr. Tobey then called Dwinell. (1) He testified that she spoke illogically and interjected
whispered pleas of "help me, help me, help me" during the conversation. He said she sounded
scared. The Tobeys immediately called the police and then drove to Dwinell's house to investigate. 
 When the Tobeys arrived, police officers were already there. Officer Darryl Gibson
testified that Zuliani objected to his attempt to speak with Dwinell privately, and when he finally did
get Dwinell to come outside onto the porch to speak with him, Zuliani attempted several times to
interrupt the conversation by coming to the screen door and asking Officer Gibson why he was still
there. Officer Gibson tried to elicit the facts from Dwinell, but she would only whisper "help me"
when she was out of Zuliani's earshot. Dwinell appeared "very fearful" to Officer Gibson and was
"very quiet." 

 Ms. Tobey then took her sister aside and asked her privately what had happened. Ms.
Tobey could tell that Dwinell "wanted to tell" her, but Dwinell was crying and withdrawn. Dwinell
also indicated that she was afraid that, if arrested, Zuliani would "come and get her" after being
released from jail. After calming down, Dwinell told Ms. Tobey that during the prior evening,
Zuliani tried to kiss her or get her to kiss him. She pushed him away and he fell "on his butt." He
got back up and "pushed her and she fell and hit her head on the bookshelf." Dwinell stated that her
head was bleeding "real bad" and that it stained her clothing and the carpet. Dwinell also related that
Zuliani drove her to a medical clinic to get treatment, but when she was referred to a hospital
emergency room because of her thyroid condition, Zuliani refused to take her and returned home to
avoid "get[ting] in trouble." 

 At trial, Dwinell provided a different version of that evening's events. She told the
jury that she did not whisper "help me" over the phone to Mr. Tobey or in person to Officer Gibson. 
She admitted that an argument with Zuliani escalated when he took a cigarette out of her mouth,
enforcing her doctor's orders not to smoke following her recent surgery. She responded by berating
him and then slapping his face. He restrained her by hugging her, holding her arms down. He
released her after she promised to stop hitting him, but upon his release, she shoved him, causing
him to fall. After he got up, she "swung at him again, and he put his arm out and he pushed [her]
away and [she] fell" into the bookshelf. She testified that she told her sister that the injury was her
own fault.

 During the investigation, the police gathered as evidence several articles of clothing. 
They also photographed Dwinell's injury, the bookshelf, and the blood-stained carpet. Officer
Gibson and the Tobeys then accompanied Dwinell to the police station, where Dwinell recounted
the events of that evening and signed an affidavit recording those events. Dwinell's affidavit is
consistent with the version of events related by her sister at trial. (2) Dwinell later told the jury that the
affidavit was inaccurately transcribed and "out of context." Dwinell also testified that the medical
clinic treated her wound with gauze and ice and never told her to go to a hospital emergency room. 

 After leaving the police station, the Tobeys sought medical attention for Dwinell at
a hospital emergency room. Dwinell was examined and received minor treatment before being
released into the care of her sister. Dwinell resided with her sister for the following five days. 
Dwinell then moved back to her home. She subsequently attempted to have the charges against
Zuliani dismissed and refused to testify at trial until she was legally compelled to do so. 


DISCUSSION

 A person commits the crime of assault if he (1) intentionally, knowingly, or
recklessly, (2) causes bodily injury to another. See Tex. Pen. Code Ann. § 22.01(a)(1) (West 2003). 
A person is justified in using force against another when and to the degree he reasonably believes
the force is immediately necessary to protect himself against the other's use or attempted use of
unlawful force. Id. § 9.31(a) (West 2003). Zuliani contends that the evidence was factually
insufficient to defeat his theory of self-defense. We disagree.

 A factual-sufficiency review requires the reviewing court to view the evidence
"without the prism of 'in the light most favorable to the prosecution.'" Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996). Appellate courts should exercise their fact jurisdiction only to
prevent a manifestly unjust result, and may not reweigh the evidence and set aside a verdict merely
because the reviewing judges feel that a different result is more reasonable. Id. Evidence can be
factually insufficient in two ways: (1) the evidence can be so weak that it renders the adverse finding
clearly wrong or manifestly unjust; or (2) an adverse finding can be so contrary to the great weight
of the evidence as to be clearly wrong. Zuliani, 97 S.W.3d at 593; Johnson v. State, 23 S.W.3d 1,
11 (Tex. Crim. App. 2000). Which standard applies normally depends on who has the burden of
proof on the relevant issue at trial. Zuliani, 97 S.W.3d at 593. If the complaining party did not have
the burden of proof at trial, the first standard generally applies, and the reviewing court must ask
whether the evidence is so weak as to render the finding clearly wrong or manifestly unjust. Id. If
the complaining party had the burden of proof at trial, as in the case of a defendant's appeal of a
rejected affirmative defense, the second standard applies and the reviewing court must ask whether
the adverse finding is so contrary to the great weight of the evidence as to be clearly wrong. The
court of criminal appeals has slightly modified this approach, and now requires that appellate courts
use both standards when the defendant challenges the factual sufficiency of the evidence supporting
an element of an offense or the factual sufficiency of evidence negating a defense that the State has
the burden to disprove. Id. at 593-95. 

 Self-defense is classified as a defense, not an affirmative defense. Id. at 594. This
means that the defendant bears only a burden of production, which requires it to produce some
evidence in support of its defensive theory in order to shift to the State the burden of persuasion to
disprove the theory. Id. Because Zuliani met his burden of production, the State was required to
disprove his theory of self-defense. (3) Id. The jury's verdict of guilty beyond a reasonable doubt was
an implicit finding against Zuliani's self-defense theory. Id. It is this finding that Zuliani contends
is supported by factually insufficient evidence. On original submission, we held that the proof of
Zuliani's guilt was not against the great weight and preponderance of the evidence. We now review
his contention using the other prong of the factual-sufficiency review as articulated by the court of
criminal appeals: Whether the State's evidence, taken alone, is too weak to support the adverse
finding. See id. at 595. 


Weakness of the Evidence

 Zuliani claims that the State relied on Ms. Tobey's description of the events to defeat
his theory of self-defense and that this evidence is too weak to support a finding of guilt beyond a
reasonable doubt. He asserts that Ms. Tobey's testimony relating Dwinell's account of the incident
was not precise, that her testimony does not necessarily overcome his self-defense theory, and that
by conceding that Zuliani and Dwinell were fighting, her testimony corroborates his self-defense
theory. We disagree.

 On cross examination, Ms. Tobey conceded that it is possible that she might not have
remembered the conversation with Dwinell exactly the way it was related to her. The fact that
defense counsel was able to get Ms. Tobey to concede that her testimony was not a verbatim
recitation of the conversation does not convince us that the evidence is so weak that the jury's choice
to believe her story cannot stand. Similarly, Dwinell's initial reluctance to tell her sister what
happened does not undermine the probative force of what she eventually related. The jury was free
to believe that Dwinell's fear of Zuliani motivated her initial reluctance. 

 Zuliani's argument that Ms. Tobey's testimony does not necessarily overcome his
self-defense theory is misplaced. Although it may be conceptually possible to imagine a 
hypothetical scenario where Ms. Tobey's testimony is logically consistent with Zuliani acting in self-defense, the conclusion that Zuliani was not acting in self-defense is certainly a rational and
permissible inference to be drawn from Ms. Tobey's actual testimony. 

 Ms. Tobey's testimony is clear and detailed. It indicates that Zuliani pushed Dwinell
into the bookshelf after she pushed him. This version suggests that Dwinell was not a threat to
Zuliani and that his conduct was not defensive, but retaliatory. Moreover, Ms. Tobey's testimony
was corroborated by her husband and Officer Gibson. The jury also considered the description of
the wound given by the police officers and medical personnel, along with witness testimony of
Dwinell's scared and withdrawn condition at the time, and photographs of the blood-stained carpet. 
The State's evidence is not, as Zuliani contends, too weak to support the jury's implicit finding
against his self-defense theory. (4)


CONCLUSION

 Viewing the evidence in a neutral light, we find that the State's evidence is not too
weak to support the jury's rejection of Zuliani's self-defense theory. Having previously concluded
that the jury's finding of guilt is not against the great weight and preponderance of the evidence, we
hold that the evidence is factually sufficient to support a finding of guilt and affirm the judgment.



 __________________________________________

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: May 8, 2003

Do Not Publish
1. The Tobeys were already somewhat concerned for Dwinell's safety. They had tried
unsuccessfully to reach Dwinell the previous evening after Dwinell's daughter had informed them
that she could hear Zuliani "really yelling" at Dwinell while the daughter was talking to her mother
on the telephone. 
2. The affidavit was offered and admitted into evidence only for the purpose of challenging
Dwinell's credibility, not for the truth of the statements it contained. 
3. We note that the State's burden of persuasion is not one that necessarily requires it to
produce additional evidence; it simply requires that the State prove its case beyond a reasonable
doubt. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). 
4. We note that, even if the jury had believed some or all of Dwinell's account of that night's
events, it still could have found that Zuliani used more force than he reasonably believed was
immediately necessary to protect himself. The evidence indicates, among other things, that Dwinell
was weak from her recent thyroid treatment and that Zuliani, a construction worker, was several
years younger than Dwinell.