# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

------------------

## ON REMAND

------------------

## NO. 03-00-00387-CR

**Gerald Zuliani, Appellant**

**v.**

**The State of Texas, Appellee**

------------------
### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. 544925, HONORABLE MIKE DENTON, JUDGE PRESIDING
------------------

## M E M O R A N D U M   O P I N I O N

A jury convicted Gerald Zuliani of assault with bodily injury and assessed punishment at one year in jail. *See* Tex. Pen. Code Ann. ' 22.01(a)(1) (West 2003). Zuliani appealed his conviction by four points of error. In his first point of error, Zuliani challenged the factual sufficiency of the evidence supporting his conviction. Specifically, he claimed that the evidence was factually insufficient to support the jury=s finding that he did not act in self-defense. This court found the evidence to be factually sufficient and affirmed the conviction. *Zuliani v. State*, 52 S.W.3d 825, 833 (Tex. App.CAustin, 2001). In our opinion, we held that the rejection of Zuliani=s defense issue was not against the great weight and preponderance of the evidence. *Id.* The court of criminal appeals reversed our judgment, holding that when a defendant challenges the factual sufficiency of a defense, as opposed to an affirmative defense, the reviewing court must do a two-pronged factual-sufficiency review. *Zuliani v. State*, 97 S.W.3d 589, 593-95 (Tex. Crim. App. 2003). Because we addressed only the second prong, determining that the jury=s finding was not against the great weight and preponderance of the evidence, and did not address the first prongCwhether the evidence was too weak to support the finding, the court of criminal appeals remanded the case with instructions to apply an additional factual-sufficiency analysis. After doing so, we reach the same conclusion that we did on original submission.

**BACKGROUND**

One evening in early February 1999, Zuliani got into an argument with his common-law wife, Patti Dwinell, who was in a weakened state from a recent surgery for thyroid cancer. Their disagreement eventually escalated into a physical confrontation. The resulting injury to Dwinell is

undisputed: she suffered a cut on her scalp when her head hit a bookshelf. The cut was estimated by a treating physician to have been approximately 1.5 inches in length.

The facts relating to the cause of her injury are disputed, however, because Dwinell at different times provided different versions of the events of that evening. The first version was recounted at trial by Dwinell=s sister, Judy Tobey, over Zuliani=s hearsay objections. Her testimony was corroborated by that of her husband, David Tobey, who also testified at trial. The jury also heard a second version of the events, favorable to Zuliani, told by Dwinell herself. According to Ms. Tobey, she was alerted to a potential problem by Dwinell=s coworker, Betty Soseby. Zuliani called Soseby the day after the alleged assault and told her that Dwinell would not be coming in to work that day. Suspicious, Soseby called the Tobeys that evening. Mr. Tobey then called Dwinell.[1] He testified that she spoke illogically and interjected whispered pleas of Ahelp me, help me, help me@ during the conversation. He said she sounded scared. The Tobeys immediately called the police and then drove to Dwinell=s house to investigate. When the Tobeys arrived, police officers were already there. Officer Darryl Gibson testified that Zuliani objected to his attempt to speak with Dwinell privately, and when he finally did get Dwinell to come outside onto the porch to speak with him, Zuliani attempted several times to interrupt the conversation by coming to the screen door and asking Officer Gibson why he was still there. Officer Gibson tried to elicit the facts from Dwinell,

---

[1] The Tobeys were already somewhat concerned for Dwinell=s safety. They had tried unsuccessfully to reach Dwinell the previous evening after Dwinell=s daughter had informed them that she could hear Zuliani Areally yelling@ at Dwinell while the daughter was talking to her mother on the telephone.

but she would only whisper Ahelp me@ when she was out of Zuliani=s earshot. Dwinell appeared Avery fearful@ to Officer Gibson and was Avery quiet.@

Ms. Tobey then took her sister aside and asked her privately what had happened. Ms. Tobey could tell that Dwinell Awanted to tell@ her, but Dwinell was crying and withdrawn. Dwinell also indicated that she was afraid that, if arrested, Zuliani would Acome and get her@ after being released from jail. After calming down, Dwinell told Ms. Tobey that during the prior evening, Zuliani tried to kiss her or get her to kiss him. She pushed him away and he fell Aon his butt.@ He got back up and Apushed her and she fell and hit her head on the bookshelf.@ Dwinell stated that her head was bleeding Areal bad@ and that it stained her clothing and the carpet. Dwinell also related that Zuliani drove her to a medical clinic to get treatment, but when she was referred to a hospital emergency room because of her thyroid condition, Zuliani refused to take her and returned home to avoid Aget[ting] in trouble.@

At trial, Dwinell provided a different version of that evening=s events. She told the jury that she did not whisper Ahelp me@ over the phone to Mr. Tobey or in person to Officer Gibson. She admitted that an argument with Zuliani escalated when he took a cigarette out of her mouth, enforcing her doctor=s orders not to smoke following her recent surgery. She responded by berating him and then slapping his face. He restrained her by hugging her, holding her arms down. He released her after she promised to stop hitting him, but upon his release, she shoved him, causing him to fall. After he got up, she Aswung at him again, and he put his arm out and he pushed [her] away and [she] fell@ into the bookshelf. She testified that she told her sister that the injury was her own fault.

4

During the investigation, the police gathered as evidence several articles of clothing. They also photographed Dwinell=s injury, the bookshelf, and the blood-stained carpet. Officer Gibson and the Tobeys then accompanied Dwinell to the police station, where Dwinell recounted the events of that evening and signed an affidavit recording those events. Dwinell=s affidavit is consistent with the version of events related by her sister at trial.[2] Dwinell later told the jury that the affidavit was inaccurately transcribed and Aout of context.@ Dwinell also testified that the medical clinic treated her wound with gauze and ice and never told her to go to a hospital emergency room.

After leaving the police station, the Tobeys sought medical attention for Dwinell at a hospital emergency room. Dwinell was examined and received minor treatment before being released into the care of her sister. Dwinell resided with her sister for the following five days. Dwinell then moved back to her home. She subsequently attempted to have the charges against Zuliani dismissed and refused to testify at trial until she was legally compelled to do so.

## DISCUSSION

A person commits the crime of assault if he (1) intentionally, knowingly, or recklessly, (2) causes bodily injury to another. *See* Tex. Pen. Code Ann. ' 22.01(a)(1) (West 2003). A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other=s use or attempted use of unlawful force. *Id.* '

---

[2] The affidavit was offered and admitted into evidence only for the purpose of challenging Dwinell=s credibility, not for the truth of the statements it contained.

5

9.31(a) (West 2003). Zuliani contends that the evidence was factually insufficient to defeat his theory of self-defense. We disagree.

A factual-sufficiency review requires the reviewing court to view the evidence Awithout the prism of >in the light most favorable to the prosecution.=@ *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Appellate courts should exercise their fact jurisdiction only to prevent a manifestly unjust result, and may not reweigh the evidence and set aside a verdict merely because the reviewing judges feel that a different result is more reasonable. *Id.* Evidence can be factually insufficient in two ways: (1) the evidence can be so weak that it renders the adverse finding clearly wrong or manifestly unjust; or (2) an adverse finding can be so contrary to the great weight of the evidence as to be clearly wrong. *Zuliani*, 97 S.W.3d at 593; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Which standard applies normally depends on who has the burden of proof on the relevant issue at trial. *Zuliani*, 97 S.W.3d at 593. If the complaining party did not have the burden of proof at trial, the first standard generally applies, and the reviewing court must ask whether the evidence is so weak as to render the finding clearly wrong or manifestly unjust. *Id.* If the complaining party had the burden of proof at trial, as in the case of a defendant=s appeal of a rejected affirmative defense, the second standard applies and the reviewing court must ask whether the adverse finding is so contrary to the great weight of the evidence as to be clearly wrong. The court of criminal appeals has slightly modified this approach, and now requires that appellate courts use both standards when the defendant challenges the factual sufficiency of the evidence supporting an element of an offense or the factual sufficiency of evidence negating a defense that the State has the burden to disprove. *Id.* at 593-95.

6

Self-defense is classified as a defense, not an affirmative defense. *Id.* at 594. This means that the defendant bears only a burden of production, which requires it to produce some evidence in support of its defensive theory in order to shift to the State the burden of persuasion to disprove the theory. *Id.* Because Zuliani met his burden of production, the State was required to disprove his theory of self-defense.[3] *Id.* The jury=s verdict of guilty beyond a reasonable doubt was an implicit finding against Zuliani=s self-defense theory. *Id.* It is this finding that Zuliani contends is supported by factually insufficient evidence. On original submission, we held that the proof of Zuliani=s guilt was not against the great weight and preponderance of the evidence. We now review his contention using the other prong of the factual-sufficiency review as articulated by the court of criminal appeals: Whether the State=s evidence, taken alone, is too weak to support the adverse finding. *See id.* at 595.

*Weakness of the Evidence*

Zuliani claims that the State relied on Ms. Tobey=s description of the events to defeat his theory of self-defense and that this evidence is too weak to support a finding of guilt beyond a reasonable doubt. He asserts that Ms. Tobey=s testimony relating Dwinell=s account of the incident was not precise, that her testimony does not necessarily overcome his self-defense theory, and that by conceding that Zuliani and Dwinell were fighting, her testimony corroborates his self-defense theory. We disagree.

_____

[3] We note that the State=s burden of persuasion is not one that necessarily requires it to produce additional evidence; it simply requires that the State prove its case beyond a reasonable doubt. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

On cross examination, Ms. Tobey conceded that *it is possible* that she might not have remembered the conversation with Dwinell *exactly* the way it was related to her. The fact that defense counsel was able to get Ms. Tobey to concede that her testimony was not a verbatim recitation of the conversation does not convince us that the evidence is so weak that the jury=s choice to believe her story cannot stand. Similarly, Dwinell=s initial reluctance to tell her sister what happened does not undermine the probative force of what she eventually related. The jury was free to believe that Dwinell=s fear of Zuliani motivated her initial reluctance.

Zuliani=s argument that Ms. Tobey=s testimony does not *necessarily* overcome his self-defense theory is misplaced. Although it may be conceptually possible to imagine a hypothetical scenario where Ms. Tobey=s testimony is logically consistent with Zuliani acting in self-defense, the conclusion that Zuliani was not acting in self-defense is certainly a rational and permissible inference to be drawn from Ms. Tobey=s actual testimony.

Ms. Tobey=s testimony is clear and detailed. It indicates that Zuliani pushed Dwinell into the bookshelf after she pushed him. This version suggests that Dwinell was not a threat to Zuliani and that his conduct was not defensive, but retaliatory. Moreover, Ms. Tobey=s testimony was corroborated by her husband and Officer Gibson. The jury also considered the description of the wound given by the police officers and medical personnel, along with witness testimony of Dwinell=s scared and withdrawn condition at the time, and photographs of the blood-stained carpet. The State=s evidence is not, as Zuliani contends, too weak to support the jury=s implicit finding against his self-defense theory.[4]

---

[4] We note that, even if the jury had believed some or all of Dwinell=s account of that night=s events,

**CONCLUSION**

Viewing the evidence in a neutral light, we find that the State=s evidence is not too weak to support the jury=s rejection of Zuliani=s self-defense theory. Having previously concluded that the jury=s finding of guilt is not against the great weight and preponderance of the evidence, we hold that the evidence is factually sufficient to support a finding of guilt and affirm the judgment.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   May 8, 2003

Do Not Publish

_____

it still could have found that Zuliani used more force than he reasonably believed was immediately necessary to protect himself. The evidence indicates, among other things, that Dwinell was weak from her recent thyroid treatment and that Zuliani, a construction worker, was several years younger than Dwinell.

9