COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO.
2-02-283-CR
 
MARSHALL PERRY STRINGER                                                        
   APPELLANT
V.
THE STATE OF TEXAS                                                        
             STATE
------------
FROM COUNTY CRIMINAL COURT NO. 5
OF DENTON COUNTY
------------
MEMORANDUM
OPINION
(1)
------------
Appellant Marshall Perry Stringer appeals
from his conviction for driving while intoxicated. Appellant pled not guilty. A
jury convicted him, and the trial court sentenced him to 120 days' confinement
and fined him $800, but suspended the jail sentence for eighteen months. In four
points on appeal, Appellant contends that the trial court erred by failing to
suppress evidence obtained after he had invoked his right to counsel, improperly
commenting on the weight of the evidence in the jury charge, and submitting an
erroneous instruction to the jury. We affirm.
Background
State Trooper Craig Bickers initiated a
traffic stop of Appellant's car after he clocked the car traveling at
seventy-three miles per hour in a sixty-mile-per-hour speed zone. When Trooper
Bickers made contact with Appellant, he immediately detected the odor of alcohol
on Appellant's breath and asked Appellant if he had been drinking. Appellant
initially responded that he had not. After continued questioning, Appellant
admitted to consuming some beers "two or three hours" earlier.
(2) Trooper Bickers then had Appellant perform several standard field
sobriety tests, took him to the Denton County jail, and ultimately arrested him
for driving while intoxicated.
Trooper Bickers videotaped Appellant at
the jail and the tape was later introduced as State's Exhibit number 2. The
videotape shows Trooper Bickers reading Appellant his statutory DIC 24 warning,
which says that he would be asked to give a specimen of his "breath and/or
blood," and which was introduced at trial as State's Exhibit number 1.
While Trooper Bickers was preparing the breathalyzer machine, the following
exchange occurred:

        
 A: So, if I were to refuse the breathalyzer test, I'm basically --
        
 T: Refusing.
        
 A: -- effectively pleading guilty? Or --
        
 T: No, sir, you're just refusing to take a breath sample, that's all that is.
        
 A: I mean, what are the ramifications of that?
        
 T: That, I can't answer for you. That's a legal question. I can't give you any
 kind of legal guidance.
        
 A: Can I see a lawyer?
        
 T: Not right now, no sir.
        
 A: I have no option to see a lawyer at this point?
        
 T: No, sir, [you] do not. [Emphasis added.]
 

Appellant took the breath test. The two
specimens measured .085 and .078, one of which was above the legal limit.
Trooper Bickers placed Appellant under arrest and read Appellant his Miranda
warnings. When asked if he understood the warnings, Appellant answered
"Yes." Trooper Bickers then asked Appellant several questions,
including when and what he had last eaten and how long he had slept the night
before.
Appellant did not make a pre-trial motion
to suppress the responses he made to Trooper Bickers' interrogation after he
received his Miranda warnings. However, before trial, Appellant
requested that the trial court exclude them from evidence. During the testimony
of the State's first witness, Trooper Bickers, the trial court excused the jury,
watched the challenged portion of the videotape, and heard Appellant's testimony
for the limited purpose of whether he had waived his right to an attorney before
the interrogation. The trial court ruled that Appellant's responses were
admissible.
Point
1
Appellant first contends that the trial
court erred when it admitted his responses to custodial interrogation because
Appellant had invoked his right to counsel. (3)
The State argues that Appellant did not invoke his right to counsel, and, in
addition, Appellant's Fifth Amendment right to counsel was not implicated
because Appellant was not subjected to custodial interrogation at the time he
mentioned counsel and Appellant later waived this right. We agree with the
State.
A defendant's Fifth Amendment right to
counsel, which protects a defendant from governmental compulsion to be a witness
against himself, is invoked when he is subjected to custodial interrogation. Griffith
v. State, 55 S.W.3d 598, 602 (Tex. Crim. App. 2001). A defendant's Sixth
Amendment right to counsel, which provides a defendant a right to assistance of
counsel in a criminal prosecution, is invoked when formal charges have been
filed against him. Id. Under the self-incrimination clauses of the
United States and Texas Constitutions, a defendant does not have the right to
consult counsel before deciding whether to take a breath test because a breath
test is not testimonial and therefore does not submit the defendant to custodial
interrogation. Halbrook v. State, 31 S.W.3d 301, 304 (Tex. App.--Fort
Worth 2000, pet. ref'd) (citing Jamail v. State, 787 S.W.2d 380, 382
(Tex. Crim. App.), cert. denied, 498 U.S. 853 (1990)).
We review a trial court's ruling on a
motion to suppress using a bifurcated standard of review. Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000). First, we give almost total deference
to a trial judge's determination of historical facts and application of the law
to fact questions that turn on credibility and demeanor of the witnesses. Id.;
Martinez v. State, 29 S.W.3d 609, 611 (Tex. App.--Houston [1st
Dist.] 2000, pet. ref'd). Second, we review de novo application of the law to
fact questions that do not turn upon credibility and demeanor. Carmouche,
10 S.W.3d at 328. When the trial court does not make findings of fact, we review
the evidence in the light most favorable to the trial court's ruling. Id.
In Halbrook v. State, we
addressed a case in which an exchange similar to that in this case occurred in a
breathalyzer room between the DWI suspect and arresting officers:

        
 APPELLANT: Do I get an opportunity to have my attorney present?
        
 OFFICER #1: Not at this time you don't.
        
 APPELLANT: Why not?
        
 OFFICER #1: Because that has nothing to do with your attorney at this moment.
        
 APPELLANT: You're going to interrogate me without an attorney present?
        
 OFFICER #2: All he's asking is whether or not you will submit to a breath
 test. Will you submit to a breath test at this time?
        
 APPELLANT: Are you asking me to give evidence against myself without an
 attorney present?
        
 . . . .
        
 OFFICER #2: He's asking you to provide a breath specimen without anyone but
 the people in this room present.
        
 APPELLANT: That's true. Without an attorney present, without legal counsel --
 to give up my right to counsel to do this, right?
        
 OFFICER #2: Are you willing to give a breath test?
        
 APPELLANT: Sure. Absolutely.

 
Halbrook, 31 S.W.3d at 302-03. In
Halbrook, we held that the appellant's question as to whether he could
have the opportunity to have his attorney present did not constitute a clear and
unambiguous invocation of his right to counsel. Id. at 304. Here, a
similar exchange occurred between Appellant and Trooper Bickers:

        
 A: Can I see a lawyer?
        
 T: Not right now, no sir.
        
 A: I have no option to see a lawyer at this point?
        
 T: No, sir, [you] do not.


The case before us is indistinguishable from Halbrook, and we likewise
hold that Appellant's question as to whether he could see a lawyer did not
constitute a clear and unambiguous invocation of his right to counsel. In
addition, Appellant did not have the right to consult counsel before taking the
breath test because, as mentioned above, a breath test is not testimonial and is
not custodial interrogation, and formal charges had not yet been filed. See
id.
Appellant attempts to distinguish Halbrook.
He argues that in Halbrook the officer clarified his answer to the
defendant's inquiry about his right to counsel before taking a breath test by
the statement that a breath test "has nothing to do with your attorney at
this moment," while Trooper Bickers just gave Appellant an unequivocal
"no." Appellant argues that the Halbrook officer's response
let the appellant know that he could not have an attorney for the limited
purpose of deciding whether to take the breath test. We do not see any
substantive difference between the exchange in Halbrook and the one in
this case. Looking at the context of the exchange, Trooper Bickers correctly
informed Appellant that he did not have a right to an attorney in deciding
whether to offer a breath sample. Appellant understood the trooper's statement
because his follow-up question asked for clarification as to whether he had the
right to counsel "at this point."
Appellant also argues that, unlike
himself, the defendant in Halbrook did not make any incriminating
statements. We do not know whether the defendant in Halbrook made
incriminating responses to interrogation. That issue is not discussed in Halbrook
because the issue on appeal was whether the jury should have been allowed to
hear the defendant allegedly invoke his right to counsel. Id. at 303.
Appellant further argues that he did not
waive his right to counsel. He argues that he was asked whether he understood
his rights, but was not asked whether he waived them. Appellant contends that he
was confused by Trooper Bickers' earlier statement that Appellant could not have
a lawyer.
A defendant may waive his rights to
counsel without an express waiver statement. Rocha v. State, 16 S.W.3d
1, 12 (Tex. Crim. App. 2000). A trial court does not have to believe a
defendant's claims that he misunderstood the Miranda warnings. Id.
(holding appellant claiming that he did not understand his rights had indeed
waived his rights when audiotape showed officers read appellant the warnings and
appellant said he understood them).
At trial, the trial court heard testimony
for the limited purpose of determining whether Appellant had waived his rights.
He testified as follows:

        
 Q: When he read your Miranda rights, what did you think after that point?
        
 A: Well, at that point -- I still-- he just told me I could not have a lawyer
 after the Miranda rights and I still felt the same way.
 (4)
         Q:
 Okay. Did you ever knowingly and intelligently or voluntarily waive your right
 to a lawyer?
        
 A: No, sir.
        
 Q: Okay. Did you rely on the police officer's affirmative statement to you
 that you did not have the right to a lawyer when you went ahead and answered
 his questions?
        
 A: That's correct.
        
 Q: If you would have known you had the right to a lawyer, would you have
 answered his questions?
        
 A: No, I wouldn't have.

Appellant contends that his previous
alleged invocation of an attorney continued after he was read the Miranda
warnings because Trooper Bickers did not expressly ask Appellant if he wanted to
waive his rights to an attorney. On cross-examination, Appellant stated that he
misunderstood the Miranda warnings and thought the warnings were
"more of a formality that he was going through and not really giving me
that option. I mean, because he had just told me that I could not have a
lawyer."
Appellant's arguments are not convincing.
Before the breath test, Appellant had clarified with Trooper Bickers that he did
not have a right to an attorney "at this point." Trooper Bickers read
Appellant his Miranda warnings after arresting him, specifically told
him he had a right to counsel, and asked Appellant if he understood these
rights. Appellant answered "Yes." Appellant then proceeded to answer
the trooper's questions without requesting counsel. The trial court could
disbelieve Appellant's claim that he misunderstood the nature of the Miranda
warnings. See Rocha, 16 S.W.3d at 12. In addition, the trial court
could find that Appellant waived his rights to remain silent and to have an
attorney present during his interrogation even though the record does not
contain an express waiver statement. See id. Accordingly, we hold that
the trial court did not err in admitting Appellant's responses to interrogation,
and we overrule his first point.
Comment
on the Weight of the Evidence
In his second and third points, Appellant
argues that the trial court improperly commented on the weight of the evidence
in the jury charge when it instructed the jury in accordance with subsection
724.019 of the Texas Transportation Code. See Tex. Transp. Code Ann. §
724.019 (Vernon 1999). The trial court instructed the jury as follows:

        
 (a) A person who submits to the taking of a specimen of breath, blood, urine,
 or another bodily substance at the request or order of a peace officer may, on
 request and within a reasonable time not to exceed two hours after the arrest,
 have a physician, qualified technician, chemist, or registered professional
 nurse selected by the person take for analysis an additional specimen of the
 person's blood.
        
 [(b)] The person shall be allowed a reasonable opportunity to contact a person
 specified by Subsection (a).
        
 [(c)] A peace officer or law enforcement agency is not required to transport
 for testing a person who requests that a blood specimen be taken under this
 section.
        
 [(d)] The failure or inability to obtain an additional specimen or analysis
 under this section does not preclude the admission of evidence relating to the
 analysis of the specimen taken at the request or order of the peace officer.
        
 [(e)] A peace officer, another person acting for or on behalf of the state, or
 a law enforcement agency is not liable for damages arising from a person's
 request to have a blood specimen taken.

See id. The State concedes that
subsection (e) should not have been included in the charge, because no evidence
was introduced making that subsection applicable to the case before us; however,
its inclusion was harmless. The State contends that subsection (d), on the other
hand, was applicable to the instant case and therefore was not erroneously
included in the trial court's charge. We agree with the State.
Appellate review of error in a jury charge
involves a two-step process. Abdnor v. State, 871 S.W.2d 726, 731 (Tex.
Crim. App. 1994). Initially, we must determine whether error occurred. If so, we
must then evaluate whether sufficient harm resulted from the error to require
reversal. Id. at 731-32. Error in the charge, if timely objected to in
the trial court, requires reversal if the error was "calculated to injure
[the] rights of the defendant," which means no more than that there must be
some harm to the accused from the error. Tex. Code Crim. Proc. Ann.
art. 36.19 (Vernon 1981); see also Abdnor, 871 S.W.2d at 731-32; Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In
other words, a properly preserved error will call for reversal as long as the
error is not harmless. Almanza, 686 S.W.2d at 171. In making this
determination, "the actual degree of harm must be assayed in light of the
entire jury charge, the state of the evidence, including the contested issues
and weight of probative evidence, the argument of counsel and any other relevant
information revealed by the record of the trial as a whole." Id.; see
also Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).
Article 36.14 of the code of criminal
procedure provides that "the judge shall . . . deliver to the jury . . . a
written charge distinctly setting forth the law applicable to the case; not
expressing any opinion as to the weight of the evidence." Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon Supp. 2003). Appellant argues that the trial
court's inclusion of subsections (d) and (e) was improper because they
"effectively told the jury that Trooper Bickers did not do anything wrong
when he failed to inform appellant about his right to a blood test."
We first examine subsection (e), which the
State concedes the trial court erroneously included in the charge, and proceed
directly to a harm analysis. In our review of the entire record, the jury
charge, and the argument of counsel, we determine that no harm occurred. The
charge, as a whole, is unremarkable, with no other erroneous or questionable
sections. The statement did not present reversible error because it correctly
related the law, it was given to the jury only in the abstract, and it was not
applied to the specific facts of the case. "When an abstract charge is
erroneously given on a theory of law, without specific application to the facts
of the case, the overruling of an objection to the abstract charge is not
error." Hughes v. State, 897 S.W.2d 285, 297 (Tex. Crim. App.
1994), cert. denied, 514 U.S. 1112 (1995).
Subsection (e) neither gave the court's
opinion nor expressed a prejudice in favor of the State. Subsection (e) did not
relate to any issue in the case, and Appellant argued as much during closing
argument. The worst that can be said of subsection (e) is that it was not needed
in the charge, and it could be ignored by the jury. See Zuliani v. State,
52 S.W.3d 825, 832 (Tex. App.--Austin 2001), rev'd on other grounds, 97
S.W.3d 589 (Tex. Crim. App. 2003).
As to subsection (d), we hold that it was
not erroneously included in the charge. Section 724.019 allows an individual to
take a blood test in addition to the test required by the arresting
police officer. Tex. Transp. Code Ann. § 724.019(a). Although Trooper Bickers
did not inform Appellant that he was entitled to request an additional blood
test under 724.019, he also did not misinform Appellant. Appellant makes no
argument that police are required to inform DWI suspects of the provisions of
section 724.019. The evidence is undisputed that Appellant did not request an
opportunity to have a qualified person come to the jail within two hours of his
arrest and draw a sample of his blood after he provided a breath sample to
Trooper Bickers. Instead, the videotape shows that Appellant was requesting to
take a blood test instead of a breath test, not in addition to
the breath test. Therefore, Trooper Bickers did not deny a request by Appellant
under 724.019.
Based on Appellant's cross-examination of
the only two witnesses in the trial, the trial court could have determined that
Appellant intended to leave the jury with an impression that Appellant had
desired to take a blood test in addition to the breath test, and that
Trooper Bickers had either misinformed him of this right or denied him the
right. Appellant cross-examined Trooper Bickers as follows:

        
 Q: [APPELLANT'S COUNSELl] Okay. Now, [Appellant] specifically asked you, Don't
 I have the right to a blood test, [sic] on that videotape, didn't he?
        
 A: [TROOPER] Yes, sir.
        
 Q: And your response was no, correct?
        
 A: Yes, sir.
        
 Q: Do you think [Appellant]'s entitled to rely on what you tell him the law is
 if he asks you?
        
 A: No, sir.
        
 Q: Well, he didn't know and he asked you, Don't I have the right to a blood
 test?
        
 A: The specific question he asked me was at that point he did not want to
 submit to my breath specimen. He wanted me to offer him a blood specimen.
        
 Q: Okay. And didn't he ask you the question, Don't I have a right to a blood
 test? And the true answer to that question is, sir, if you take this breath
 test, you have the right to have an additional specimen of your blood taken,
 and you shall be allowed a reasonable opportunity to contact a person that can
 draw the blood. That would have been the most correct and accurate answer you
 could have given him; is that right?
        
 A: No, sir.

During cross-examination of the technical
supervisor, counsel again asked the question about Appellant's "statutory
right" to get a blood test. Appellant's cross-examination posed a danger of
misleading the jury on whether the trooper had misinformed Appellant about his
"right" to take a blood test, and the focus of his closing argument
was that Appellant had the "right" to take a blood test and that he
could now take his case to the jury and "ask the people is what happened to
me right under the law." Appellant's various representations concerning a
"right" to a blood test could have caused the jury to question the
weight it should give the breath test or the fairness of admitting a breath test
when Appellant had been misinformed about or denied his "right" to an
additional blood test. Once Appellant's alleged right to take a blood test was
interjected into the case, the instruction was a "necessary
clarification" of the law and was not a comment on the weight of the
evidence. See Cockrell v. State, 933 S.W.2d 73, 90 (Tex. Crim. App.
1996), cert. denied, 520 U.S. 1173 (1997). Accordingly, we hold that
subsection (d) of section 724.019 was properly included in the charge and
overrule Appellant's second and third points.
Reasonable
Doubt Instruction
In his fourth point, Appellant contends
that a sentence in the jury charge improperly defined "reasonable
doubt" and urges us to overrule our prior holdings to the contrary. The
jury charge instructed the jury as follows:

 It is not required that the prosecution
 proves guilt beyond all possible doubt; it is required that the prosecution's
 proof excludes all reasonable doubt concerning the defendant's guilt.

Appellant argues that this instruction
effectively lowered the State's burden of proof. We have previously rejected
similar arguments based on identical jury instructions. See Minor v. State,
91 S.W.3d 824, 828-29 (Tex. App.--Fort Worth 2002, pet. filed); Vosberg v.
State, 80 S.W.3d 320, 324 (Tex. App.--Fort Worth 2002, pet. filed).
Appellant has not provided this court with any persuasive reason why it should
overrule these precedents, and we decline to do so. We overrule Appellant's
fourth point.
Conclusion
Having overruled all of Appellant's
points, we affirm the trial court's judgment.
 
                                                       
   PER CURIAM

PANEL A: HOLMAN, J.; CAYCE, C.J.; and
GARDNER, J.
GARDNER, J. concurs without opinion.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: June 5, 2003

1. See Tex. R. App. P. 47.4.
2. The videotape from the scene of the stop showed that
Appellant said he had a couple of beers "two or three hours" previous.
The videotape from the breathalyzer room showed that Appellant said he had two
beers "way earlier in the day."
3. Appellant does not specify whether his attack is based
on the Fifth or Sixth Amendments to the United States Constitution; however, his
specific claim is that his answers during interrogation should not have been
admitted, not that the trial court erred in letting the jury hear him allegedly
invoke his right to an attorney.
4. The videotape reflects that Appellant was told he could
not have an attorney before Miranda was read.